PENDERGAST, et al, Plaintiffs, v. MUNS, et al, Respondents, and LYNCH, et al, Appellants.

(238 N. W. 344.)

(File No. 6961. Opinion filed October 19, 1931.)

*Danforth & Barron,* of Sioux Falls, for Appellants.

*James O. Berdahl* and *Teigen & Davis,* all of Sioux Falls, for Respondent.

CAMPBELL, J. The action above entitled was instituted in the circuit court of Minnehaha county, S. D., by Michael and Florence Pendergast, as executors of Rose Pendergast, plaintiffs, against Ed. Muns, defendant, on August 3, 1925. In that action Edwin Erickson, J. W. Mooty and Adrian State Bank, a corporation, were garnished. The garnishment process was served upon the garnishees named and upon the principal defendant Muns. On August 10, 1925, the garnishees made a joint disclosure reciting that they were indebted to the principal defendant Muns and to one Ingram (who, as the record shows, was a son-in-law of Muns) in the sum of $15,264.67, which indebtedness arose by virtue of a judgment recovered against said garnishees in a previous action wherein Muns and Ingram had been the plaintiffs. The disclosure further recited that the garnishee defendants had no knowledge as to whether said judgment against them was the property of

Muns or of Ingram, or in what proportion Muns and Ingram claimed or owned the same. The disclosure also recited that the garnishee defendants desired to pay the judgment in order to stop accumulation of interest thereon, and they tendered the full amount thereof into court to be held by the clerk of the court pending the determination of the question of who was entitled thereto. On August 10, 1925, and apparently pursuant to said disclosure, an order was entered in the case of Pendergast against Muns directing the clerk of the court to receive and receipt for the moneys tendered by the garnishees pursuant to their disclosure, and hold the same until the further order of the court, and on the same day the clerk of courts did accept and receive from the garnishee defendants Erickson, Mooty, and Adrian State Bank the sum of $15,264.67 (being the amount due from said garnishees on the judgment against them obtained jointly by Muns, principal defendant in the instant case, and Ingram.

The issues between the Pendergasts as plaintiffs and Muns, the principal defendant, were tried, and resulted in a judgment in favor of the plaintiffs and against the defendant Muns in the amount of $15,007.80 on March 13, 1926.

No effort appears to have been made to bring Ingram into the proceedings or to determine his interest in the fund deposited by the garnishees with the clerk of courts until after judgment had been secured against Muns in the principal case.

On April 13, 1926, an order was made and entered requiring Ingram to show cause before the court on April 26, 1926, "why an order of this court should not be made and entered making the said Sam Ingram a party defendant to the above entitled garnishment action." This order to show cause was not served upon Ingram within the time required by its terms, and no effort was made to bring it on for hearing. Thereafter, and on June 29, 1926, upon the ex parte application of the plaintiffs (the Pendergasts), an order was made and entered in the case of Pendergast against Muns reciting the garnishment therein, the disclosure of the garnishees, and the deposit by them with the clerk, and ordering that Ingram "be and he hereby is made a party defendant to the above garnishee action, and that notice thereof setting forth the facts, together with a copy of this order, shall be served upon the said Ingram in the manner required for the service of a sum-

mons in a civil action, and that such service may be made upon him personally within the state of Minnesota (Ingram residing at or near Marshall, Minnesota) and that he have thirty days after the service of said notice and order upon him to answer in the above garnishee action setting forth any claim or defense which he may have to said action." This order, together with a copy of the affidavit upon which it was based, was served upon Ingram and service admitted by him at Marshall, Minn., on June 30, 1926. On July 31, 1926, upon the application of plaintiffs' attorneys, which application recited, among other things, that Ingram had made no appearance pursuant to the requirement of the order of June 29th and was in default, a document was signed by the trial judge entitled "Judgment in Garnishee Action," wherein the making and service of the order of June 29th was recited, and it was further recited that Ingram was in default and had failed to answer or appear pursuant to the requirements of said order, and it was ordered and adjudged that Ingram had no right or title to or interest in the money previously and on August 10, 1925, deposited with the clerk by the garnishees, Erickson, Mooty, and Adrian State Bank, and that the principal defendant, Muns, was the sole owner thereof. Thereafter, and on the same day, an order was entered requiring the clerk to pay over to Messrs. Lynch, Doyle & Mahoney, attorneys for plaintiffs Pendergasts, the balance of the money in his hands deposited with him by the garnishees, Erickson, Mooty and Adrian State Bank, and to partially satisfy the judgment in the principal action in favor of the Pendergasts and against Muns to the extent of such payment. Two facts should here be noted. On August 11, 1925, the day after the deposit by the garnishees with the clerk, a stipulation was entered into, signed and approved by the attorneys for the plaintiffs Pendergasts, by the attorneys for the defendant Muns, by the attorneys for the garnishees, and by Muns and Ingram personally, stipulating that the judgment in favor of Ingram and Muns and against the garnishees, the proceeds whereof the garnishees had deposited with the clerk pursuant to the garnishment against them in the case of Pendergast against Muns, was subject to an attorney's lien in favor of Messrs. Muller, Feyder & Conway, who had been attorneys for Muns and Ingram in their action against the garnishees, wherein said judgment was secured (and who were also the attorneys for Muns as the prin-

cipal defendant in the instant case brought by the Pendergasts), which stipulation recognized the validity of such attorney's lien and consented that the amount thereof, approximately $4,000, should be paid by the clerk to said attorneys. Such payment was accordingly made and the deposit in the hands of the clerk thereby reduced to approximately $11,000, so that on July 31, 1926, the money deposited with the clerk by said garnishees had been reduced to an amount considerably less than the judgment in favor of the Pendergasts and against Muns whereon it was ordered to be paid and applied. The second fact to be noted is that prior to July 31, 1926, and on July 27, 1926, the principal defendant, Muns, had appealed to this court from the judgment recovered against him by the plaintiffs Pendergasts, upon which appeal he had furnished a cost bond only and had made no attempt to supersede the judgment.

Pursuant to such order of the court made and entered July 31, 1926, and on the same day, or the next day, the clerk paid over to Messrs. Lynch, Doyle & Mahoney, attorneys for the plaintiffs Pendergasts, the balance remaining in his hands of the deposit by the garnishees in the sum of approximately $11,000, and satisfied the judgment of Pendergast against Muns to that extent. It appears that this money was remitted by said attorneys to their clients, the Pendergasts, and $7,500 thereof was used by the Pendergasts to pay attorney's fees of Lynch, Doyle & Mahoney and associate counsel in Iowa for services rendered in the case of Pendergast against Muns for which an attorney's lien had previously been filed on June 26, 1926.

On the appeal taken by Muns from the judgment obtained against him in favor of the Pendergasts, said judgment was reversed by this court (Pendergast v. Muns, 54 S. D. 90, 222 N. W. 607) by an opinion filed December 31, 1928, and the remittitur went down from this court and was filed in the court below on March 7, 1929.

Thereafter, and on June 10, 1929, pursuant to order to show cause previously issued, an application was made in the court below by James O. Berdahl, as attorney for the principal defendant, Muns, and as attorney for Ingram, for an order requiring Lynch, Doyle & Mahoney to restore to and redeposit with the clerk the sum of approximately $11,000 which had previously been paid over

to them by said clerk on or about July 31, 1926, pursuant to the order of the court under date of July 31, 1926. The application was made on the affidavit of Mr. Berdahl and upon all the files and records in the case of Pendergast against Muns. The affidavit in substance charges that Lynch, Doyle & Mahoney (and particularly Mahoney, upon whose affidavit the order of July 31, 1926, was entered) obtained the default judgment against Ingram and the order for the payment of the fund (both on July 31, 1926) by misrepresentation and concealment. This application of Muns and Ingram for restoration of the money was opposed by Lynch, Doyle & Mahoney. After hearing, the learned trial judge entered an order requiring them to redeposit said money with the clerk. Said order recites the institution of the action of Pendergast against Muns, and proceeds in its material portions as follows:

"That in the said action the Adrian State Bank, one Edwin Erickson and one J. W. Mooty were made garnishee defendants.

"That said garnishee defendants disclosed liability to said defendant, Ed. Muns, and to the said Sam Ingram in the sum of $15,264.67, and set out in their affidavit of disclosure that they had no knowledge as to whether said property was the property of the defendant, Ed. Muns, or the property of the said Sam Ingram, or in what proportion said Ed. Muns and the said Sam Ingram claimed the same.

"That upon application therefor, an order was made by this court permitting the said garnishee defendants, the Adrian State Bank, Edwin Erickson and J. W. Mooty, to pay said sum into court to abide the result of this action, and thereupon the said sum was paid to Eugene I. Foster, clerk of this court, and thereafter, upon application of said plaintiffs by their attorneys, Lynch, Doyle & Mahoney, the said Sam Ingram, by order of court, was made garnishee defendant in said action.

"That thereafter, upon stipulation of the parties and upon order of the court, certain proper payments out of said sum were made by the said clerk, which payments totalled the sum of $3,816.32, leaving a balance in the possession of said clerk of courts belonging to said defendant or to the said Sam Ingram, garnishee defendant of $11,448.35.

"That the issues in said action were tried to the court, and upon such trial the issues therein were decided in favor of plaintiffs

and judgment rendered in their favor on the 18th day of March, 1926; that within the time provided by law, the said Ed. Muns perfected an appeal to the Supreme Court of the state of South Dakota, and on such appeal, the said judgment in favor of plaintiffs was reversed, the remittitur therein being filed with the clerk of this court on the 7th day of March, 1929.

"That on the 31st day of July, 1926, the said Lynch, Doyle & Mahoney, attorneys for plaintiffs, caused to be filed herein an affidavit signed by the said Eugene C. Mahoney, one of said attorneys for plaintiffs, wherein it is recited that the said Ed. Muns was in default in the garnishment action brought against him and the said garnishee defendant, Sam Ingram, whereas in truth and in fact the said Ed. Muns, defendant, had answered in the principal action, and the issues therein had been tried, all of which was well known to said plaintiffs and to their said attorneys, Lynch, Doyle & Mahoney, and upon the said affidavit the said plaintiffs and the said John D. Lynch, William T. Doyle and Eugene C. Mahoney, their attorneys, procured an order from the court directing the said Eugene I. Foster, clerk of said court, to pay to said Lynch, Doyle & Mahoney, attorneys, the said sum of $11,448.35, less the clerk's commission of $114.48; that thereupon the said Eugene I. Foster, clerk as aforesaid, paid to said Lynch, Doyle & Mahoney, the sum of $11,333.87, which said sum is wrongfully retained by them and the said plaintiffs, demand for the return thereof having been made.

"That said defendant, Ed. Muns, and the said Sam Ingram, garnishee defendant, are entitled to have the said sum of $11,333.87 returned to and redeposited with the clerk of this court to await final outcome of said action.

"Therefore, it is ordered that the said plaintiffs and the said John D. Lynch, William T. Doyle and Eugene C. Mahoney be, and they hereby are required, forthwith upon the service of this order to repay to and redeposit with the clerk of this court the said sum of Eleven Thousand Three Hundred Thirty-three & 87/100 ($11,333.87) Dollars to await the final outcome of said action."

From this order Lynch, Doyle & Mahoney have appealed to this court.

     ■   It is clear law that the appeal by Muns from the judgment for payment of money obtained against him by the Pendergasts, no supersedeas being filed, did not stay the execution of that judgment.   Section 3152, Rev. Code 1919; State ex rel. Sholseth v. Knight, 52 S. D. 572, 219 N. W. 258.  And on July 31, 1926, when the money was paid over by the clerk and credited upon the Pendergast judgment, the Pendergasts had a perfect right to collect that judgment if they could, notwithstanding the appeal.

     ■   It is also clear that, upon the reversal of a judgment, the law raises an obligation on the part of the party who received benefits from its enforcement to restore those benefits to the adverse party.   Whether such restitution must be sought by an independent action, or whether it may be obtained after the reversal of a judgment by a summary proceeding in the same suit wherein the judgment was originally obtained, is a question we need not pass upon in this case.

     ■   The money in question was ordered to be paid to Lynch, Doyle & Mahoney as attorneys for the Pendergasts, not as individuals.   To the extent of the payment, the Pendergast judgment was satisfied of record by the clerk.   The record shows that Lynch, Doyle & Mahoney, within a day or so after receiving the money, transmitted it to their clients, the Pendergasts.   It is not material that the Pendergasts may have used some of this money, when they received it, to pay attorney's fees due to Lynch, Doyle & Mahoney. Lynch, Doyle & Mahoney received the money from the clerk in behalf of the Pendergasts, and not otherwise.   The law is clear that a party who has received money in behalf of the judgment creditor, for instance, as agent or attorney of the judgment creditor, cannot be compelled, after reversal of the judgment, to restore the same, unless it be shown that such party still retains it.   The general rule is stated in 4 C. J. 1236.   See, also, Langley v. Warner, 3 N. Y. 327; Butcher v. Henning, 90 Hun. 565, 35 N. Y. S. 1006; In re White, 82 App. Div. 553, 81 N. Y. S. 858; McDonald v. Napier, 14 Ga. 89; Wright v. Aldrich, 60 N. H. 161.  Upon the record here presented, if there is any right to restitution, it must lie against the Pendergasts, who through the agency of their attorneys received the money and upon whose judgment the money was credited.

     It is doubtful whether a right to restitution is established by

any one upon the record before us. The application for restoration of the money is made jointly by Muns and Ingram. Upon an examination in supplementary proceedings, March 18, 1929, in the circuit court of Minnehaha county, S. D., in an action instituted against the said Muns by Benson Bros. Auto Company, Muns gave certain testimony, which, by stipulation of all parties, is made a part of the record in the present cause. In that testimony Muns stated definitely and positively upon his oath that he never at any time had any interest in the judgment recovered in the name of himself and Ingram against Adrian State Bank and others, being the judgment, the proceeds of which were deposited by said judgment debtors as garnishees in the instant case, which proceeds were paid over pursuant to order of court to Lynch, Doyle & Mahoney, and which Muns now seeks to recover back. In the face of this testimony of Muns appearing in this record, it is difficult to see where he has any right to have the money in question restored.

So far as concerns Ingram, when the money in question was deposited in court on August 10, 1925, he was fully advised within less than twenty-four hours of said deposit and of all the facts and circumstances surrounding the same, and consented that a certain payment from such deposit should be made to Muller, Feyder & Conway, attorneys for himself and Muns, as hereinbefore recited.

█ █ The money was on deposit with the clerk of the court wherein the case of Pendergast against Muns was pending. The money was actually in the custody of the court, and there is no question but that the court had physical jurisdiction over the res. Under those circumstances, the court on June 29th ordered Ingram to come in within thirty days, and set forth his claim to the fund and any defense he might have as a garnishee. This order was peculiar in form. While it purports to make Ingram a garnishee defendant, yet it is clear that its real purpose was not to require him to disclose whether he was indebted to Muns or had property of Muns in his possession, but to require him to assert and establish his right, if he had any, in and to the fund on deposit in court. This order was served on Muns June 30th. July 31st the document was entered called "Default Judgment in Garnishment." It is not based on any disclosure by Ingram, nor does it purport to

render judgment against Ingram for the amount the Pendergasts claimed from Muns, which, under section 2462, Rev. Code 1919, would be the only proper judgment against a garnishee who failed to answer; but in truth and in fact, regardless of its christening, it purports to do nothing more than to adjudicate that Ingram had no right, title, or interest in the fund in the hands of the clerk. Six days later, on August 6, 1926, Muns and Ingram, appearing jointly by their attorneys, Muller, Feyder & Conway, applied to the trial court, and attacked the order of July 31st adjudging that Ingram had no interest in the fund and the order of July 31st directing that the fund should be paid over to Lynch, Doyle & Mahoney. By so doing both of them invoked the jurisdiction of the court and submitted to such jurisdiction, and submitted to the court the entire controversy regarding the question of whether or not Ingram had any right, title, or interest in or to the fund previously deposited with the clerk. After full hearing upon affidavits, answering affidavits and rebuttal affidavits, and upon the entire record, the court on August 18, 1926, made and entered an order refusing to vacate the order of July 31st wherein it had been held that Ingram had no interest in the fund in question, refusing to vacate the order of July 31st wherein it had been directed that the money be paid over by the clerk to Lynch, Doyle & Mahoney as attorneys for the Pendergasts, and refusing to order the restoration of the money into court. Neither Muns nor Ingram ever appealed from either of the orders of July 31, 1926, or from the order of August 18, 1926, denying their application to vacate the same. Clearly it has been adjudicated by a court of competent jurisdiction, which jurisdiction Ingram himself invoked and submitted to, that Ingram had no interest in the fund in question, and he cannot now be heard in this proceeding to assert such an interest.

Respondents maintain, however, if we understand their position correctly, that Lynch, Doyle & Mahoney obtained the order of July 31, 1926, for the payment over of the money in question by fraud and concealment. And respondents advance the contention that, if attorneys, officers of the court, obtain from the judge of a court an order for the clerk to pay over money to them, and obtain that order by fraud, concealment, or improper practices, then the court, upon discovery of such fraud, has an inherent power

to require upon its own initiative that the money be brought back by the attorneys who took it away, regardless of how or whether they may have disposed of it in the meantime, and regardless of whose the money may be. Respondents cite Wilmerdings & Mount v. Fowler, 45 How. Prac. (N. Y.) 142. The determination of the soundness of that theory in its entirety need not be undertaken in this case, for the facts before us present no opportunity for its application. Some of the steps attempted in the court below were perhaps irregular as to procedure and inartistic in form. Language was used in the various orders, affidavits, etc., with reference to making Ingram a garnishee defendant, when it is entirely apparent from the whole proceeding that what was really being undertaken and all that was being undertaken was to determine the rights of Ingram, if any, in and to a fund in court, which fund had been paid into court by garnishee defendants who said they owed it upon a judgment which ran jointly in the name of Muns and Ingram. Of the entire situation Muns at all times had knowledge. It is undoubtedly true that the form of some of the proceedings attempted was not the best that might have been devised or adopted. It is perhaps true that these attorneys were in error as to the legal effect of some things that were done, but the record shows affirmatively that they disclosed all the facts fully to the trial judge, and that the trial judge, with full knowledge of all the facts, adopted their view, right or wrong, of the legal situation arising upon those facts. There is no room upon this record for any inference that Lynch, Doyle & Mahoney, or any of them, made any false representations to the court or concealed any facts from the court. Indeed, their disclosure of all material facts to the judge seems to have been at all times painstakingly full and complete. Respondents particularly rely upon the claim that Lynch, Doyle & Mahoney deceived the court by applying on July 31, 1926, for the so-called "default judgment" against Ingram upon an affidavit by Mahoney alleging that Ingram was in default, in that he had failed to appear and answer as required by the order of June 29, 1926, when, as a matter of fact, he had appeared pursuant to the order of June 29th and was not in default.

The facts in that connection are as follows:

As hereinbefore stated, an order was made on April 13, 1926, which did not purport to make Ingram a party to the action or

require him to assert his claims to the fund, but did order him to show cause why he should not be brought into the action. As we have said, this order was not served within the time therein specified, and was never attempted to be brought on for hearing in any manner. However, on July 27, 1926, Ingram, through his attorneys Muller, Feyder & Conway (who were also attorneys for Muns), caused to be served upon Lynch, Doyle & Mahoney, attorneys for the Pendergasts, a certain affidavit. Although served twenty-eight days after the order of June 29th had been served upon Ingram, the affidavit makes no reference whatever to the order of June 29th, and is dated and sworn to April 18, 1926. This affidavit recites briefly the facts concerning the disclosure by the garnishee defendants in the principal action and their deposit of the fund in court, and alleges that Ingram always was, and still is, the sole owner of the judgment recovered in the name of himself and Muns against the garnishee defendants; that he is the owner of the money deposited in court by the garnishee defendants as the proceeds of said judgment; that he claims said money; and that Muns has no right, title, or interest therein. The affidavit then proceeds to recite the issuance and service of the order to show cause dated April 13, 1926, and alleges that affiant Ingram is not a resident of the state of South Dakota, but is a resident of Minnesota, and that the circuit court of Minnehaha county, S. D., has no jurisdiction over him, and then, proceeds to set forth, as affiant's only request for relief, that the affiant by his said affidavit appears specially for the sole purpose of moving the court that the order of April 13, 1926, be vacated and set aside because the court had no jurisdiction over the affiant. Lynch, Doyle & Mahoney seem to have treated the affidavit so served on July 27th as no appearance pursuant to the order of June 29th, but as a special appearance for the purpose of having the order of April 13th vacated upon the ground of lack of jurisdiction. They proceeded to take Ingram at his word, and immediately and on July 29, 1926, secured from the trial judge who had issued the show cause of order of April 13, 1926, and caused to be filed, an order vacating and setting aside the same. Respondents contend that the affidavit of Ingram sworn to April 18, 1926, but served July 27, 1926, was, as a matter of fact, a general appearance by Ingram pursuant to the order of June 29, 1926, and that he was not, there-

fore, in default on July 31, 1926, but was entitled to notice before the entry of any judgment or order against him. However, when the attorneys on July 31, 1926, applied for the so-called default judgment against Ingram whereby it was adjudicated in substance that he had no interest in the fund on deposit with the clerk, the facts concerning Ingram's affidavit served upon them on July 27, 1926, were fully exhibited to the court. The affidavit of Mahoney, reciting that Ingram was in default, fully recited the facts concerning the affidavit served July 27, 1926, and a full and complete copy thereof was attached to and made a part of Mahoney's affidavit of default; and the affidavit of default recited, in substance, that said affidavit served July 27, 1926, was a special appearance only for the purpose of vacating the show cause order of April 13, 1926, and that said order had in fact been vacated and set aside. The court appears to have shared the view of the attorneys that the affidavit served July 27, 1926, was merely a special appearance to vacate the show cause order of April 13th, and did nôt constitute any general appearance pursuant to the order of June 29th, and did not relieve Ingram from being in default as to the order of June 29th. Whether this view was right or wrong need not be decided. Very manifestly there was no deception of the court, no misrepresentation, and no concealment of facts from the court. Six days after the order for the payment of this money to the attorneys was made, Muns and Ingram applied for the revocation of the order and the restoration of the money, and one of the principal grounds of their application was that the order had been obtained from the judge by fraud, imposition, and concealment. This application was brought on for hearing and fully heard before the same judge who had granted the order for the payment of the money, and, after full hearing, he refused to revoke that order, thus impliedly holding that it had not been secured from him by fraud or misrepresentation. Whether the order was right or wrong as a matter of law, the parties and the controversy were all before the court, and no appeal was taken, and there is no room upon this record for any inference that the order, whether erroneous or not, was obtained by fraud, misrepresentation, concealment, or any other species of unethical practice or imposition upon the court.

The order now appealed from was made in the court below upon all the files and records in the instant case. The situation is

somewhat unusual. By stipulation of counsel the entire record in the court below was introduced in this court. We have examined it painstakingly, and have considered it with care, and are unable to find therein any support whatever, upon any principles of established law, for the order appealed from. It follows that such order must be, and it is, reversed.

POLLEY, P. J., and ROBERTS and WARREN, JJ., concur.
RUDOLPH, J., disqualified and not sitting.