Steven F. AUNE and Karen A. Aune, husband and wife, Plaintiffs and Appellants,

v.

B–Y WATER DISTRICT, Defendant and Appellee.

No. 18102.

Supreme Court of South Dakota.

Considered on Briefs April 21, 1993.

Decided Sept. 1, 1993.

Paul Spizzirri, Tyndall, Larry F. Hosmer of Kabeiseman, Hosmer & Kettering, Yankton, for plaintiffs and appellants.

Thomas E. Alberts, Avon, for defendant and appellee.

WUEST, Justice.

Steven and Karen Aune (Aunes) appeal a summary judgment for B–Y Water District (the District) in their action against the District for unjust enrichment and intentional infliction of emotional distress. We affirm.

## FACTS

It is important to resolution of this matter to recognize the existence of two separate judgments involved in this appeal. On December 2, 1988, Tabor Plumbing and Electric (Tabor), a party uninvolved in the instant case, obtained a judgment against Aunes in the amount of $1,614.06. Tabor's judgment was related to the costs of some services it had provided in installing a septic tank for Aunes. On March 23, 1989, the Yankton County Clerk of Courts issued a writ of execution on Tabor's judgment.

On May 8, 1989, Aunes obtained their own judgment against the District in the amount of $12,999.10. Aunes' judgment resulted from the District's failure and refusal to provide certain water services to Aunes. On May 11, 1989, the Yankton County Sheriff, acting pursuant to the writ of execution issued on Tabor's judgment, levied on Aunes' judgment against the District.

On June 5, 1989, the District filed a notice of appeal and supersedeas bond in connection with an appeal of Aunes' judgment. On June 15, 1989, the Yankton County Sheriff published notice of the execution sale of Aunes' judgment. Michael Williams (Williams), the District's general manager, saw the notice of sale in a local newspaper. Williams called the District's attorney to ask if anyone could purchase the judgment at the execution sale. Based upon the attorney's advice, Williams appeared at the public auction of Aunes' judgment on June 26, 1989. The only persons present for the auction were Williams, the District's attorney, a deputy sheriff and Steven Aune. Williams, acting on the District's behalf, was the only bidder. Acting through Williams, the District purchased Aunes' judgment for the sum of $2,500.

On December 5, 1990, this Court affirmed Aunes' judgment against the District. See, Aune v. B–Y Water Dist., 464 N.W.2d 1 (S.D.1990). On August 2, 1991, Aunes served the District with a summons and complaint for unjust enrichment and intentional infliction of emotional distress. Aunes sought both actual and punitive damages for the District's allegedly unlawful purchase of Aunes' judgment. The District answered Aunes' complaint and, on May 8, 1992, filed a motion for summary judgment. A hearing on the motion was conducted on July 30, 1992.

During the summary judgment hearing, Aunes argued that their judgment against the District was unlawfully sold in violation of the supersedeas bond the District had filed when it appealed the judgment. Aunes asserted that the filing of the supersedeas bond should have had the effect of staying the sale of the judgment at the execution sale.

On August 11, 1992, the circuit court entered a memorandum opinion rejecting Aunes' argument. On August 19, 1992, the circuit court entered a summary judgment for the District and dismissed Aunes' complaint for failure to state a cause of action on which relief could be granted. Aunes appeal.

## ISSUE

### DID THE CIRCUIT COURT ERR IN GRANTING SUMMARY JUDGMENT FOR THE DISTRICT?

In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Pickering v. Pickering,* 434 N.W.2d 758, 760 (S.D.1989) (citations omitted).

There is generally no dispute between the parties over the pertinent facts. The issue in this case focuses solely on the legality of the execution, levy and sale of Aunes' judgment against the District in order to satisfy Tabor's judgment against Aunes. In that regard, Aunes again contend that the District's filing of the supersedeas bond in connection with its appeal of Aunes' judgment should have stayed the execution sale of that judgment. We disagree.

■ At the outset, it is clear that South Dakota law does permit the execution, levy and sale of a judgment as an asset in order to satisfy an earlier judgment. SDCL 15-18-17 in the chapter on execution of judgments describes the property subject to levy on execution:

All property and interests therein and rights appurtenant thereto, tangible or intangible, including shares or interests in any corporations, credits, choses in action, and whether capable of manual delivery or not, belonging to the party against whom the execution was issued, and not exempt by law may be taken on execution and sold

or otherwise applied to the satisfaction of the judgment as provided by law.

Moreover, SDCL 15-18-21 specifically outlines the procedure for levying on a judgment:

A levy under a writ, warrant, or execution upon a judgment, must be made by serving a notice of levy upon the clerk of the court in which it is docketed, describing the judgment by the title of its action, date, amount, book, and page of docketing, and by mailing copies of such notice of attachment by registered or certified mail to the judgment debtor, and the present owner of the judgment as shown by the docket, and to their attorneys of record, if any, at their last known post-office addresses.

Based upon the above provisions, it is clear that Tabor was acting within its rights in levying on Aunes' judgment against the District as a means of satisfying its own judgment against Aunes. Insofar as whether the District's filing of the supersedeas bond in connection with its appeal of Aunes' judgment stayed Tabor's ability to levy on that judgment, SDCL 15-26A-32 defines the matters stayed with the filing of such a bond:

When an approved supersedeas bond is filed it shall stay all further proceedings in circuit court *upon the judgment* or order accordingly, except that the circuit court may proceed upon any other matter included in the action, not affected by the judgment or order appealed from. (emphasis added).

This court further defined the scope of application of a supersedeas bond in *Wentzel v. Huebner,* 78 S.D. 471, 473-74, 104 N.W.2d 476, 477 (1960):

The effect of such undertaking is to suspend further proceedings pending determination of the appeal. *Janssen v. Tusha,* 67 S.D. 597, 297 N.W. 119 [ (1941) ]. By this means the status quo of the matter is preserved.

It is the intent of our statute that the privilege of suspending the execution of such judgment *is that of the party entitled to appeal. State ex rel. Sholseth v. Knight,* 52 S.D. 572, 219 N.W. 258 [ (1928) ]. The

liability with which it is concerned *is that of the appellant.* (emphasis added).

■ The above provisions make clear that the only execution of judgment stayed by the filing of a supersedeas bond is the execution of *the judgment under appeal.* It is the liability of the judgment debtor *on that judgment* with which the supersedeas bond is concerned because it is *that* judgment debtor who holds the privilege of suspending the execution of the judgment appealed.

■ Applying these principles in the instant case means that Aunes were clearly precluded from executing on their judgment against the District because the District, the judgment debtor on that judgment, appealed the judgment and filed a supersedeas bond in connection with the appeal. This is of no assistance to Aunes, however, because it was not the execution of Aunes' judgment against the District that led to the sale of that judgment. The judgment was sold because Tabor executed on its earlier judgment against Aunes. There is no indication in the record that Aunes, the judgment debtors on that judgment, appealed the judgment or obtained a supersedeas bond in connection with any such appeal. Thus, there was nothing to stay Tabor's ability to execute on its own judgment against Aunes by levying on Aunes' judgment against the District. Aunes' judgment was merely an asset held by Aunes that was used to satisfy Tabor's judgment, an action clearly countenanced by the previously referenced statutes on executions.

Aunes do cite various authorities for the proposition that a judgment debtor is precluded from purchasing a judgment against itself while the matter is on appeal. However, none of the authorities cited by Aunes support that proposition. *Aune v. Breneman,* 74 S.D. 324, 52 N.W.2d 483 (1952) was an appeal in a foreclosure action. The issue was whether the appeal and undertaking for a stay of execution extended the redemption period allowed by the judgment of foreclosure. There is nothing in the decision concerning the ability of a judgment debtor to purchase a judgment against itself during the pendency of an appeal of the judgment. The same is true with regard to *Edge v.*

*Harsha,* 334 N.W.2d 741 (Iowa 1983). The issue in *Edge* was whether a judgment lien against real property could be discharged where the judgment debtor furnished a supersedeas bond pending an appeal of the judgment. In *Rhoades v. State Real Estate Commission,* 153 Neb. 625, 45 N.W.2d 628 (1951), the issue was whether the time of commencement of a period of suspension of a real estate broker's license was postponed by the filing of an appeal bond in connection with an appeal of the order of suspension. Finally, in *State By Johnson v. Sports & Health Club,* 368 N.W.2d 747 (Minn.Ct.App. 1985), the issue was whether the state Supreme Court's denial of a motion for a stay of an administrative law judge's order was equivalent to an order directing compliance with the administrative order.

■ We can construe none of the above authorities as foreclosing a judgment debtor's ability to purchase a judgment against itself while the judgment is on appeal. In fact, South Dakota law on the execution of judgments places no limitation on who may purchase a judgment at an execution sale. SDCL 15–19–7 merely provides in pertinent part that, "[p]ersonal property *must* be sold on execution at public auction *to the highest bidder.*" (emphasis added). In this instance, it is undisputed that the District was the highest bidder at the public auction of Aunes' judgment against the District. Thus, South Dakota law not only allowed but compelled the sale of the judgment to the District.

■■ The dissent submits that, in order to execute on a judgment, it must be a final and unreversed judgment after an appeal or after the time for an appeal has expired. In *Pendergast v. Muns,* 59 S.D. 135, 238 N.W. 344 (1931), this Court held that the appeal by a judgment debtor from a judgment for the payment of money did not stay the execution of the judgment where no supersedeas bond was filed. Even more significantly, this Court also held that, "[i]t is also clear that, upon the reversal of a judgment, the law raises an obligation on the part of the party who received benefits from its enforcement to restore those benefits to the adverse party." *Pendergast,* 59 S.D. at 142, 238 N.W. at

347 [1]. This authority makes clear that one who executes on a judgment during the pendency of an appeal of the judgment does so at his own risk. If he obtains benefits from the execution and the judgment is subsequently reversed, those benefits must then be restored to the adverse party. It follows that the purchaser of a judgment during the pendency of the appeal of the judgment purchases at his own risk. If the judgment is affirmed, the purchaser is entitled to the value,of the judgment. However, if the judgment is reversed, the purchaser obtains nothing. Whatever the result of the appeal, *Pendergast* makes clear that the pendency of an appeal of a judgment, in and of itself, is no bar to an execution on the judgment.

The dissent also questions our reliance on *Wentzel, supra.* In *Wentzel, supra,* the plaintiff sued the defendant for personal injuries suffered in a car accident. The judgment was for the plaintiff and the defendant appealed. In connection with the appeal, the defendant executed a supersedeas bond. During the pendency of the appeal, the plaintiff proceeded by garnishment against the defendant's liability insurer. The trial court dismissed the garnishment proceedings as premature and the plaintiff appealed. This Court initially held that the supersedeas bond executed by the defendant did not satisfy statutory requirements and, therefore, the bond did not prevent the plaintiff from attempting to enforce his judgment. Thus, Wentzel's discussion of supersedeas bonds is instructive in this case. As to the issue of the finality of the judgment in *Wentzel* and whether the garnishment proceedings against the insurer were premature because of the pendency of the appeal of the judgment, this Court held that the liability of the insurer was dependent on the language of the policy. The language of the policy provided that no action would lie against the insurer until the amount of the insured's obligation to pay was "finally determined" by a judgment. Referencing the language of SDC 1960 Supp. 33.0104 (now SDCL 15-1-3) that an action is deemed pending from its commencement until a final determination on appeal [2], this Court held that the insured's obligation to pay was not "finally determined" by the plaintiff's tort judgment and affirmed the dismissal of the garnishment proceedings.

Here, this Court is not being asked to construe the language of an insurance policy. SDCL 15-18-21 clearly and unambiguously discusses the procedure for execution upon a "judgment." To hold that Aune's judgment against the District was not really a "judgment" because of the pendency of the appeal would raise an anomalous result. It is Aunes' "judgment" against the district that was appealed. If there was no "judgment," there was no right of appeal and the purported appeal should have been dismissed instead of having been affirmed in Aune's favor. *See, Griffin v. Dwyer,* 88 S.D. 357, 220 N.W.2d 1 (1974). Thus, the only conclusion that can be drawn is that there was a "judgment" as required for an appeal by SDCL 15-26A-3(1), as defined by SDCL 15-6-54(a) and as contemplated by SDCL ch. 15-18 on executions.

Perhaps sound policy should require that a judgment be final and unreversed to be subject to execution. That, however, is a matter for rule or statute, not a matter for this Court's determination in this appeal.

---

1. *See also, Wasserburger v. Consolidated Management,* 502 N.W.2d 256 (S.D.1993) where this Court found the garnishee in a garnishment action commenced to satisfy a judgment personally liable for the funds sought by the judgment creditor. The garnishee had released the funds to a third party during the pendency of an appeal of a judgment which, among other things, authorized the release. The judgment was later reversed by this Court. We concluded that when the garnishee released the funds during the pendency of the appeal, *he acted at his own risk* and, therefore, he stood personally liable for the garnished funds.

2. The dissent places heavy emphasis on SDCL 15-1-3 which, in its entirety, provides that, "[a]n action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, *unless the judgment be sooner satisfied.*" (emphasis added). In a sense, Aunes' judgment against the district in this case was satisfied "sooner" than resolution of the appeal by virtue of its sale. As a result of the sale, Aunes *did obtain* a benefit from the judgment through the satisfaction of Tabor's judgment. Aunes, thereby, stood free and clear of Tabor's judgment.

Based upon the above analysis, there was no unlawful act committed by the District in purchasing Aunes' judgment. Thus, Aunes' causes of action for unjust enrichment and intentional infliction of emotional distress, premised on that asserted unlawful act, were untenable. The trial court appropriately granted summary judgment for the District.

Affirmed.

HENDERSON and SABERS, JJ., concur.

MILLER, C.J., and AMUNDSON, J., dissent.

MILLER, Chief Justice (dissenting).

The majority and the parties fail to resolve the most fundamental issue presented in this appeal: What is a "judgment?" The follow-up question then, is whether Aune has such a judgment against B-Y. The majority's discussions and arguments are premised on the erroneous "fact" that Aune had a valid judgment against B-Y upon which Tabor Plumbing could levy. Such a premise is not legally sound. Under our statutory scheme, as set forth below, it is clear that Aune did not have a judgment against B-Y upon which Tabor Plumbing could levy and which could be sold at a sheriff's sale. Therefore, I dissent.

The term "judgment" is today defined as "the *final determination* of the rights of the parties in an action or proceeding." SDCL 15-6-54(a) (emphasis added).* This definition is dispositive of the issues presented. It is undisputed that B-Y appealed from a judgment in favor of Aune, that it filed a supersedeas bond and that its appeal was filed in accord with the appropriate appellate procedures. "An action is deemed to be pending from the time of its commencement until its *final determination* upon appeal[.]" SDCL 15-1-3 (emphasis added). Therefore, the action resulting in the judgment appealed from by B-Y was *still pending* at the time of the disputed execution, levy and sale. This

Court affirmed the trial court's judgment on December 5, 1990, in *Aune v. B-Y Water Dist.*, 464 N.W.2d 1 (S.D.1990). Consequently, Aune had no judgment, within the statutory definition (SDCL 15-6-54(a)), until December 25, 1990, which is twenty days after this Court's judgment finally determining the rights of the parties. Thus, on May 11, 1989, Aune possessed no judgment upon which Tabor could execute or upon which the Yankton County Sheriff could levy, nor did Aune possess a judgment which could be sold at public auction to B-Y Water District on June 26, 1989.

It is no answer for the majority writer to find an "anomalous result" in such an interpretation of the meaning and intent of the plain language of the definition of "judgment" to say that "[i]f there was no 'judgment,' there was no right of appeal and the purported appeal should have been dismissed instead of having been affirmed in Aune's favor." Majority Op. at 765. The right of appeal is specifically provided to one who has a judgment "from the circuit court[.]" SDCL 15-26A-3(1). Despite the use of the identical term "judgment," the context of the relevant statutes requires that the circuit court's "judgment" be different from a "judgment" which can be executed upon, levied against, or sold.

The latter use of the term "judgment" creates no options for the parties as it cannot be appealed and is a "final determination of the rights of the parties[.]" SDCL 15-6-54(a). This "judgment" may be executed upon by the judgment creditor or levied against by third parties and sold. The former use of the term "judgment" creates at least two options for the parties to the action. First, the "judgment" of the circuit court may be treated as fulfilling a procedural requirement enabling an appeal. If this option is chosen, the party appealing has a further choice of whether or not to file a

---

* The parties and the majority writer refer the reader to *Wentzel v. Huebner*, 78 S.D. 471, 104 N.W.2d 476 (1960). The majority writer finds this case persuasive on page 763 and unpersuasive on page 765. This case is irrelevant to the question before us. It must be read in light of the fact that it was decided under facts which included no valid supersedeas bond and was decided under a markedly different statutory definition of "judgment." That definition perforce affected that Court's interpretation of the meaning and effect of a supersedeas bond on a judgment or execution thereon. That meaning and effect is not applicable under today's substantially different definition of "judgment."

supersedeas bond to stay execution on the judgment. In the event this bond is properly filed, I respectfully suggest it is an "anomalous result" to interpret this bond as effectively allowing all the world to execute upon the judgment while at the same time preventing the judgment creditor, the party most interested in the judgment, from executing thereon. The second option available to the parties is to treat the circuit court's judgment as a final determination of rights. In which case, the circuit court's judgment becomes a "judgment" within the meaning of SDCL 15–6–54(a), in which case this "judgment" may also be executed upon by the judgment creditor or levied against by third parties and sold.

The majority's reliance on *Pendergast*, 59 S.D. 135, 238 N.W. 344 (*Pendergast II*), is misplaced. While one can hardly dispute the majority's recitation of the statements of law taken from that complex case, those statements are inapplicable here. That entire decision was premised upon the fact that NO supersedeas bond had been filed to stay execution of the circuit court's judgment. *Id.*, 59 S.D. at 142, 238 N.W. at 347. In the instant case, it is important to recall that such a bond HAS been filed to stay execution of the circuit court's judgment.

Another distinction to be drawn is that the judgment against Muns was reversed by this court at *Pendergast v. Muns*, 54 S.D. 90, 222 N.W. 607 (1928) (*Pendergast I*). We affirmed the judgment against B–Y. The money used by the trial court to partially satisfy the judgment against Muns "was actually in the custody of the court, and there is no question but that the court had physical jurisdiction over the res." *Pendergast II*, 59 S.D. at 143, 238 N.W. at 348. This stands in sharp contrast to the instant case, where the funds to satisfy the underlying judgment against Aune were not in existence. Finally, it is important to recall that we determined Muns had no rights in the underlying judgment, even though the judgment was taken in his name. *Id.* Again, that is not this case. *Pendergast* simply does not offer guidance to the resolution of whether Aune had a judgment against B–Y upon which Tabor Plumb-

ing could levy and which could be sold at a sheriff's sale.

I would hold the execution, levy and sale of Aune's B–Y "judgment" are nullities. The statutory meaning of "judgment" leads but to one conclusion: Aune held no judgment against B–Y which could be executed upon, levied against, or sold. The trial court erred in its conclusion that the filing of the supersedeas bond did not stay the sale of Aune's "judgment." Summary judgment for B–Y should be reversed.

I am authorized to state that AMUNDSON, J., joins this dissent.