**CROPMATE COMPANY, d/b/a Agribasics Company, a Delaware corporation, Plaintiff,**

v.

**INDIAN RESOURCES INTERNATIONAL INC., a Montana corporation, Defendant.**

No. CV–92–149–GF.

United States District Court, D. Montana, Great Falls Division.

Dec. 14, 1993.

Michael B. Anderson, Patricia D. Peterman, Holland & Hart, Billings, MT, for plaintiff.

Jerry D. Guenther, Monteau, Guenther & Decker, PC, Great Falls, MT, David F. Stufft, Stufft Law Office, Cut Bank, MT, Terrance Wellman, Indian Resources Intern. Inc., Browning, MT, Theodore Hall, Joel McKay, for defendant.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

### PROCEDURAL HISTORY

This action has its genesis in a contract purportedly executed between the plaintiff, Cropmate Company, d/b/a Agribasics Company ("Cropmate"), and the defendant, Indian Resources International Inc. ("Indian Resources"), the terms of which provide that Cropmate will supply propane gas and storage tanks for retail sale by Indian Resources. On November 5, 1992, Indian Resources instituted a breach of contract action against Cropmate in the Tribal Court of the Black-feet Indian Reservation, alleging a general failure on the part of Cropmate to abide by the terms of the contract, and more particularly, a failure to supply propane gas as agreed. On the same day Indian Resources instituted the referenced Tribal Court action, Cropmate, invoking the diversity jurisdiction of this court, pursuant to 28 U.S.C. § 1332, instituted the present action seeking a declaration that no enforceable contract existed between Cropmate and Indian Resources.

Invoking the "exhaustion" rule enunciated in *National Farmers' Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), and extended in *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), Indian Resources moves the court to dismiss the present action, or in the alternative stay these proceedings for the purpose of affording the Tribal Court the opportunity to consider, in the first instance, the extent of its jurisdiction. The question determinative of Indian Resources' motion is whether the "exhaustion" rule announced in *National Farmers Union* mandates that this court refrain from exercising jurisdiction over this controversy in order to afford the tribal court system an opportunity to determine its own jurisdiction. The court answers the question in the affirmative.

### FACTUAL BACKGROUND

Indian Resources is a closely held corporation organized under the laws of the State of Montana. The corporation is co-owned by Terrence Wellman and Theodore Hall. Indian Resources' principal place of business is Browning, Montana; a location within the boundaries of the Blackfeet Indian Reservation. Cropmate, in turn, is a Delaware corporation doing business in the State of Montana.

Placed in controversy by both the complaint filed by Indian Resources in Tribal Court and the complaint filed by Cropmate in this court, is a document dated June 1, 1992, which purports to be a "Marketing and Sales Agreement" between Indian Resources and Cropmate. Terry Wellman, ostensibly in his capacity as president of Indian Resources, signed the document on behalf of

that corporate entity. The signatures of Messrs. Jim Lyons and Tom Clark, the Montana location manager and propane manager of Cropmate, also appear on the document. The parties, of course, take opposing viewpoints as to whether or not the referenced document constitutes an enforceable contract. The immediate issue before this court, however, is not whether a contractual relationship existed between the parties. Rather, the issue is whether the Tribal Court of the Blackfeet Indian Reservation is entitled to address, in the first instance, its own jurisdiction.

In support of its motion requesting the court to refrain from exercising jurisdiction over this controversy, Indian Resources has presented the affidavit of Terrence Wellman which attests to, *inter alia*, the following facts:

> (i) Wellman and Hall are the co-owners of Indian Resources;
>
> (ii) Wellman and Hall are both enrolled members of the Blackfeet Indian Tribe, residing on the Blackfeet Indian Reservation;
>
> (iii) the "Marketing and Sales Agreement" was executed among all signatories to the agreement at a location within the Blackfeet Indian Reservation;[1]
>
> (iv) commencing in the summer of 1992, Indian Resources marketed, within the boundaries of the Blackfeet Indian Reservation, propane supplied to it by Cropmate.[2]

Cropmate resists Indian Resources' invocation of the exhaustion rule enunciated in *National Farmers Union*, imploring the court to recognize that the controversy presented is not a "reservation affair" mandating deference to Tribal Court jurisdiction. Additionally, Cropmate asserts Indian Resources' invocation of tribal jurisdiction has been made in bad faith with an intent to harass the plaintiff and, accordingly, constitutes an exception to the doctrine of mandatory deference to tribal court jurisdiction.

In *National Farmers Union*, the Supreme Court announced a rule of "exhaustion" which requires Tribal Court remedies to be exhausted before the question of tribal jurisdiction is addressed by the federal courts. 471 U.S. at 856–57, 105 S.Ct. at 2453–54. The Court concluded proper respect for tribal legal institutions required the federal courts to afford those tribunals a full opportunity to consider the issues before them, and to rectify any errors. 471 U.S. at 857, 105 S.Ct. at 2454.

The principle of federal deference embodied in the "exhaustion" rule is compelling regardless of whether federal jurisdiction is grounded in diversity of citizenship or federal question:

> Regardless of the basis for jurisdiction, federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a full opportunity to determine its own jurisdiction. In diversity cases, as well as federal question cases, unconditional access to the federal forum would place it in direct competition with tribal courts, thereby impairing the latter's authority.

*Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. at 16, 107 S.Ct. at 976 (citation omitted).

In *Iowa Mutual*, the Court effectively extended "the exhaustion rule" to preclude federal court adjudication of the merits of a controversy pending in a tribal court, regardless of the fact the federal court's jurisdiction was concurrent with tribal court. *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. at 16 n. 8, 107 S.Ct. at 976 n. 8. The Court deemed it imperative that federal courts refrain from intervening until the tribal legal institutions have a full opportunity to evaluate the claim. 480 U.S. at 16, 107 S.Ct. at 976. The Court

---

1. Cropmate alleges in its complaint that neither Lyons nor Clark possessed actual or apparent authority to bind Cropmate to the purported agreement. Cropmate does not, however, present any evidence contradicting Wellman's statement that the document itself was executed by the signatories within the exterior boundaries of the Blackfeet Indian Reservation.

2. Cropmate acknowledges that it supplied Indian Resources with certain amounts of propane in 1992. The court assumes, for purposes of the present discussion, that delivery of the propane was made by Cropmate to Indian Resources at a location within the exterior boundaries of the Blackfeet Indian Reservation.

drew no distinction between the situation where the purpose of the federal action was to directly challenge the tribal court's jurisdiction over a pending case, and the situation where the merits of the controversy were simply placed before the federal court. 480 U.S. at 9, 107 S.Ct. at 971.[3]

Cropmate argues that abstention predicated upon the doctrine of comity is inappropriate in this case because there exists no evidence that the alleged execution of a contract between two non-Indian corporations somehow threatens or directly affects the integrity or security of the Blackfeet Tribe of Indians. In the opinion of Cropmate, the record must establish the existence of a "colorable" question that Cropmate engaged in conduct within the exterior boundaries of the Blackfeet Indian Reservation and that the conduct threatens or has some direct effect on the political integrity or security of the Tribe before this court would be compelled to abstain from exercising its jurisdiction. Cropmate, however, asks the court to construe the principle of judicial self-restraint underlying the rule of exhaustion enunciated in *National Farmers Union/Iowa Mutual* in a manner that is inconsistent with the law of this Circuit.

■ Tribal courts are appropriate forums for the exclusive adjudication of disputes over transactions taking place within the boundaries of a reservation. *United States v. Plain Bull*, 957 F.2d 724, 727 (9th Cir.1992), *citing, Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65, 98 S.Ct. 1670, 1680, 56 L.Ed.2d 106 (1978). Consequently, a tribal court presumptively has jurisdiction over activities that take place on tribal land. *Id.* (*citing, Wellman v. Chevron U.S.A., Inc.*, 815 F.2d at 578). However, as Cropmate accurately notes, mandatory deference to a tribal court does not follow automatically from an assertion of tribal court jurisdiction because "deference to tribal courts is not required

when the dispute at issue is not a 'reservation affair' or did not 'ar[i]se on the reservation'". *Crawford v. Genuine Parts Co., Inc.*, 947 F.2d at 1407, *citing, Stock West Corp. v. Taylor*, 942 F.2d 655, 660 (9th Cir.1991), *rehearing granted*, 956 F.2d 207, *on rehearing*, 964 F.2d 912, *aff'd in part, vacated in part* (9th Cir.1992). The determinative inquiry is whether the dispute at issue, *i.e.*, the enforceability of the purported agreement between Cropmate and Indian Resources, is a "reservation affair", *LaPlante*, 480 U.S. at 16, 107 S.Ct. at 976, or is a dispute that is properly considered to "arise out of the reservation", *Stock West Corp. v. Taylor*, 942 F.2d at 661.

■ In resolving the issue presented, the court is guided by the analysis employed by the Court of Appeals for this Circuit in *Stock West Corp. v. Taylor*, 964 F.2d 912 (9th Cir.1992), in assessing whether a civil dispute was properly considered to have arisen on reservation land.[4] The court began its analysis reiterating that "Indian tribes possess 'inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands.'" 964 F.2d at 918, *citing, Montana v. United States*, 450 U.S. 544, 565, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981). Turning to the issue of abstention, the court reviewed the rationale underlying *National Farmers Union, i.e.*, the orderly administration of justice in federal court through the development of a full record in the tribal court utilizing the expertise of the tribal courts to determine the extent of their own jurisdiction. 964 F.2d at 919. The court concluded that the appropriate inquiry in determining whether abstention is appropriate in a particular case is whether "the assertion of tribal court jurisdiction is plausible and appears to have a valid or genuine basis." 964 F.2d at 919, *citing, A & A Concrete, Inc. v. White*

---

**3.** Since *Iowa Mutual,* the Court of Appeals for this Circuit has stated that whether proceedings are actually pending in the appropriate tribal court is irrelevant to the determination of whether deference to the tribal court is warranted. *Crawford v. Genuine Parts Co., Inc.*, 947 F.2d 1405, 1407 (9th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1991); *see also, Wellman v. Chevron U.S.A., Inc.*, 815

F.2d 577 (9th Cir.1987) (dismissal affirmed although no tribal court action was pending).

**4.** The factual background to the *Stock West Corp. v. Taylor* case is set forth in detail in the appellate court opinion and need not be repeated here. 964 F.2d at 914–917.

*Mountain Apache Tribe,* 781 F.2d 1411 (9th Cir.), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986) (a tribal court has the initial power to determine its own jurisdiction where the undisputed facts show that "the transactions which form the bases for appellant's claims occurred or were commenced ón tribal territory").

The undisputed facts of record establish that the transactions on which this controversy centers occurred on the Blackfeet Indian Reservation. The transactions involved, at a minimum, Terrence Wellman, a member of the Blackfeet Tribe of Indians. Based on these facts, the court is constrained to conclude the assertion of tribal court jurisdiction is plausible and appears to have a valid or genuine basis.

By carefully culling language from *Stock West Corp. v. Taylor,* Cropmate argues that the transaction which forms the basis of an individual's assertion of tribal court jurisdiction must involve the Tribe itself. Only if the transaction involves the Tribe, Cropmate submits, can there exist a threat that directly affects the integrity or security of thè Tribe. Because the purported agreement on which this controversy centers involves, in the opinion of Cropmate, two "state corporations", so the argument goes, there does not exist a plausible basis for tribal court jurisdiction. Cropmate's argument misses the point.

The rule of "exhaustion" established in *National Farmers Union/Iowa Mutual* is predicated upon recognition of the fact that "promotion of tribal self-government and self-determination [requires] that the Tribal Court have 'the first opportunity to evaluate the factual and legal bases for the challenge' to its jurisdiction." *Iowa Mutual v. La-Plante,* 480 U.S. at 15–16, 107 S.Ct. at 976 (*citing, National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. at 856, 105 S.Ct. at 2454). The federal policy supporting tribal self-government is what "directs a federal court to stay its hand in order to give the Tribal Court a 'full opportunity to determine its own jurisdiction'." *Id.* The question of whether or not a particular Tribal Court does, in fact, possess jurisdiction over a particular civil dispute presents a distinct question properly resolved in accordance

with the rationale of *Montana v. United States, supra. National Farmers Union/Iowa Mutual* mandate that the Tribal Court of the Blackfeet Indian Reservation, the forum whose jurisdiction is being challenged, must be afforded the first opportunity to evaluate the factual and legal bases for the challenge. *National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. at 856, 105 S.Ct. at 2454.

Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the present action be, and the same hereby is DISMISSED as a matter of comity between this court and the Tribal Court of the Blackfeet Indian Reservation.