**Keith GESINGER, Plaintiff and Appellee,**

v.

**Gerald GESINGER, Defendant and Appellant.**

No. 18649.

Supreme Court of South Dakota.

Argued Sept. 14, 1994.

Decided April 26, 1995.

Al Arendt of Maher and Arendt, Pierre, for plaintiff and appellee.

Eric H. Bogue, Dupree, for defendant and appellant.

AMUNDSON, Justice.

Appellant Gerald Gesinger (Gerald) appeals from the trial court's decision to grant comity to the judgment of the Cheyenne River Sioux Tribal Court (tribal court) in favor of Keith Gesinger (Keith). We affirm.

### FACTS

The parties in this case are father and son. Gerald is non-Indian; Keith is Indian, and an enrolled member of the Cheyenne River Sioux Tribe. The two entered into an oral employment agreement whereby Keith would receive livestock as compensation for working for his father. In 1987, a dispute arose over ownership of twenty head of cattle which, at the time of the initial dispute, were located on the Cheyenne River Sioux Reservation.

Gerald and Keith remained at odds over ownership of the livestock. In the spring of 1988, the controversy culminated in a physi-

cal confrontation when Gerald came onto Keith's trust property attempting to reclaim some of the cow-calf pairs. Tribal police and the Dewey County Sheriff were summoned and the parties entered into a written agreement over ownership of the cattle on the site. Like the previous oral contract, the written agreement was never fully satisfied by either party.

In July of 1988, Gerald commenced a suit in tribal court against Keith for conversion of the cattle. Keith moved to dismiss the suit, alleging the tribal court lacked jurisdiction under the Cheyenne River Sioux Tribal By-Laws existing at the time.[1] The tribal court granted Keith's motion on October 21, 1988. Gerald did not appeal this decision.

After the suit was dismissed, Keith sold some of the cattle at a Fort Pierre livestock sale. Gerald filed a claim and delivery action in Stanley County which tied up the cattle proceeds. The state trial court subsequently dismissed the action for lack of jurisdiction over Keith, due to his status as an enrolled tribal member. In January 1989, Gerald once again entered onto Keith's trust property and removed more cattle allegedly belonging to Keith.

In January 1990, Keith returned to tribal court to file an action against Gerald seeking money damages for wrongful conversion of the cattle and the return of any remaining livestock. The tribal court assumed jurisdiction based on the recent decisions of *Duchenaux v. First Federal* (# 85–022–A) [16 Ind. L.Rep. 6147 (1989) ]; *Thorstenson v. Cudmore,* (# 88–018–A) [18 Ind.L.Rep. 6051 (1991) ]; and *Lind v. Dale* (# 89–019–A). Gerald filed an interlocutory appeal regarding the jurisdiction issue to the Tribal Court of Appeals. On January 17, 1992, the Cheyenne River Court of Appeals filed a memorandum opinion and order affirming tribal court jurisdiction. Keith's claim was remanded for a jury trial in tribal court.

The jury returned a verdict for Keith, which the tribal court ultimately reduced to

1. "This court shall have jurisdiction over all Indians upon the reservation and over such disputes or lawsuits as shall occur between Indians on the reservation or between Indians and non-Indians where such cases are brought before it by stipu- lation of both parties...." Article V, Sec. 1(c) Cheyenne River Sioux Tribe By-laws (1935). [Subsequently amended in 1992]. *See* amended provision, p. 20, *infra.*

$29,517.86. Gerald appealed the verdict and posted a cost bond, but refused to post a supersedeas bond. The tribal appeal was pending at the time this action for comity was filed.[2] Due to Gerald's refusal to post the supersedeas bond, the tribal court issued an order denying a stay of execution of judgment pending the outcome of the tribal appeal. Keith brought a motion for release of funds to retrieve the disputed sum being held by the clerk of courts for Stanley County. His motion was denied by the Sixth Circuit Court. Keith then filed a petition to grant comity to the tribal court judgment with the Eighth Circuit Court in Dewey County. Comity was granted. Gerald appeals this order.

### ISSUES

I. DID THE CIRCUIT COURT ERR BY GRANTING COMITY TO THE TRIBAL COURT JUDGMENT UNDER SDCL 1–1–25?

II. DID THE CIRCUIT COURT ERR BY GRANTING COMITY TO A TRIBAL COURT JUDGMENT STILL ON APPEAL TO THE TRIBAL APPELLATE COURT?

### STANDARD OF REVIEW

▮▮▮ Comity will only be granted where the elements of SDCL 1–1–25 are established by clear and convincing evidence. *One Feather v. O.S.T. Pub. Safety Com'n.*, 482 N.W.2d 48, 49 (S.D.1992). "Comity" has been defined as:

The extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call 'the comity of nations.' . . .

'Comity,' in the legal sense, is . . . the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Mexican v. Circle Bear*, 370 N.W.2d 737, 740 (S.D.1985) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163, 16 S.Ct. 139, 143, 40 L.Ed. 95, 108 (1894)). Comity is a question of jurisdiction which is reviewed de novo. *Red Fox v. Hettich*, 494 N.W.2d 638, 642 (S.D.1993) (citing *State v. Spotted Horse*, 462 N.W.2d 463, 465 (S.D.1990)), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991).

### DECISION

### ISSUE I

THE CIRCUIT COURT DID NOT ERR BY GRANTING COMITY TO THE TRIBAL COURT JUDGMENT UNDER SDCL 1–1–25.

The requirements to grant comity to a tribal court under South Dakota law are established in SDCL 1–1–25.[3] This statute

---

**2.** The Cheyenne River Sioux Tribal Court of Appeals has since decided this case, affirming the jury's verdict in favor of Keith. *Gesinger v. Gesinger*, (# 93–001–A).

**3.** SDCL 1–1–25 provides:

No order or judgment of a tribal court in the state of South Dakota may be recognized as a matter of comity in the state courts of South Dakota, except under the following terms and conditions:

(1) Before a state court may consider recognizing a tribal court order or judgment the party seeking recognition shall establish by clear and convincing evidence that:

(a) The tribal court had jurisdiction over both the subject matter and the parties;

(b) The order or judgment was not fraudulently obtained;

(c) The order or judgment was obtained by a process that assures the requisites of an impartial administration of the justice including but not limited to due notice and a hearing;

(d) The order or judgment complies with the laws, ordinances and regulation of the jurisdiction from which it was obtained; and

(e) The order or judgment does not contravene the public policy of the state of South Dakota.

(2) If a court is satisfied that all of the foregoing conditions exist, the court may recognize the tribal court order or judgment in any of the following circumstances stances:

(a) In any child custody or domestic relations case; or

(b) In any case in which the jurisdiction issuing the order or judgment also grants

allows a state court to recognize tribal court orders and judgments where the tribal court had jurisdiction over the subject matter and the parties; the judgment was obtained by a process assuring the requisites of an impartial administration of justice; the judgment complies with tribal laws, ordinances and regulations; and does not contravene the public policy of the state of South Dakota. *One Feather*, 482 N.W.2d at 49 (*holding* trial court erred by ordering execution of a judgment when execution was in direct conflict with a recognized tribal court order).

Gerald argues that the circuit court's grant of comity to the tribal court order was erroneous because Keith failed to satisfy the requirements of SDCL 1–1–25. Gerald asserts four reasons to support his claim that granting comity was in error. They are: first, the tribal court lacked jurisdiction to entertain the suit; second, the tribal court was not impartial in administering justice; third, the tribal court failed to comply with its own tribal constitution; and fourth, to grant comity contravenes public policy. Each argument will be discussed in turn.

*I. Jurisdiction*

■ Gerald's first contention is that the tribal court lacked both subject matter and personal jurisdiction. The Cheyenne River Sioux Tribal Constitution in effect at the time, provides in pertinent part: "[Tribal Courts] shall have jurisdiction ... between Indians and non-Indians where such cases are brought before it by stipulation of both parties ..." C.R.S.T. Const. Art. V, Sec. (1)(c).[4] Gerald alleges that tribal jurisdiction could not be maintained because the parties did not so stipulate.

Despite the irony of the facts, at the time Keith initiated the second trial over the controversy in tribal court, the status of the law had changed to warrant both personal and subject matter jurisdiction to the tribe. Tribal Court of Appeal's case law, subse-

quent to the dismissal of Gerald's original claim, interpreted that "stipulation of tribal jurisdiction" could be satisfied by the parties' written agreement. *See Dale*, (# 89–019–A); *Thorstenson*, (# 88–018–A); *Duchenaux* (# 85–022–A). The Tribal Court of Appeals reasserted this interpretation when Gerald argued the jurisdiction issue on interlocutory appeal.

Both parties concede they signed a written agreement regarding ownership of the cattle. Moreover, the cattle were located on trust property of the Cheyenne River Sioux Reservation when Gerald entered onto the reservation to repossess them. The United States Supreme Court has held it inappropriate for states to assert jurisdiction over "reservation affairs" if it would interfere with tribal sovereignty and self-government and impair the authority of tribal courts. *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16, 107 S.Ct. 971, 976, 94 L.Ed.2d 10 (1987) (citing *Nat. Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985)).

In a case factually related to the Gesinger dispute, *Cropmate Co. v. Indian Resources Intern. Inc.*, the Ninth Circuit Court of Appeals held that "the determinative inquiry [of tribal jurisdiction] is whether the dispute at issue, *i.e.*, the purported agreement between [the parties], is a 'reservation affair.'" 840 F.Supp. 744, 747 (D.Mont.1993). The court explained that "tribal courts presumptively [have] jurisdiction over activities that take place on tribal land." *Id.* (citing *United States v. Plainbull*, 957 F.2d 724, 727 (9th Cir.1992)).

Clearly, the dispute between Gerald and his son is a "reservation affair." The cattle were located on trust land, Keith was a tribal member residing on the reservation, and the written agreement regarding the cattle disposition was executed on the reservation. Therefore, the trial court was correct to find jurisdiction with the tribal court.

---

comity to orders and judgments of the South Dakota courts; or
(c) In other cases if exceptional circumstances warrant it; or
(d) Any order required or authorized to be recognized pursuant to 25 U.S.C., § 1911(d) or 25 U.S.C., § 1919.

4. This provision in the Cheyenne River Sioux Tribal Constitution was amended July 17, 1992, two and one-half years after the original lawsuit was filed. The amendment now reads that tribal courts have "jurisdiction over claims and disputes arising on the reservation."

■ Gerald further alleges that this court's holding in *Red Fox*, 494 N.W.2d 638, supports his claim against recognizing the tribal court's personal jurisdiction over a non-Indian. *Red Fox* held that, unless the tribe has authority to regulate the conduct of non-Indians on state highways, the tribal court does not have authority to adjudicate the action. *Id.* at 645. However, the facts of *Red Fox* are clearly distinguishable from those presented in this case.

Here, we are dealing with a breach of contract and conversion action against a tribal member whose property was maintained on Indian trust land. Moreover, Gerald freely entered into a contract with Keith regarding that property. In contrast, *Red Fox* involved a tort on a state highway. Therefore, *Red Fox* does not apply. Given the subsequent case law of the Tribal Court of Appeals regarding personal jurisdiction, and the fact that the Gesinger cattle were located on Indian trust land, the circuit court was correct in finding the tribal court properly had both subject matter and personal jurisdiction.

## II. Impartiality

■ Gerald additionally alleges that comity should not be granted because the tribal court was biased against him. He notes that the tribal court acceded to jurisdiction over Keith's lawsuit while denying jurisdiction over his prior cause of action, even though both were based on the same controversy. We find this argument to be without merit. First, Gerald did not appeal the tribal court's dismissal of his original action in tribal court. Second, although unsuccessful in his efforts, Gerald was given, and took, an opportunity to argue this very jurisdictional issue before the Tribal Court of Appeals. That court denied his claim, based upon the current decisions in *Duchenaux*, (# 85–022–A); *Thorstenson*, (# 88–018–A); and *Lind*, (# 89–019–A). Ultimately, Gerald had access to the gamut of the tribal courts, whose decisions are accurate interpretations of the law. Therefore, he did not suffer from any bias at the hands of the tribal court.

## III. Judicial Estoppel

■ Contrary to the Tribal Court of Appeals' decision on interlocutory appeal in this case, Gerald argues that judicial estoppel should have barred Keith's claim. Again, we disagree. The Tribal Court of Appeal's decision discussed *State v. St. Cloud*, 465 N.W.2d 177 (S.D.1991), set forth the elements of judicial estoppel and concluded these elements were not established in the case. *St. Cloud* requires the party asserting the doctrine show:

1.  A party's inter-proceeding inconsistency must be about a matter of fact, not law.

    .        .        .        .        .

3.  The two positions must be absolutely irreconcilable.
4.  The prior position must not have been taken as a result of mistake, inadvertence, or fraud upon the party taking the position.

*Id.*, 465 N.W.2d at 180. Gerald did not establish any of these elements.

In spite of Gerald's assertion, the issue of tribal court jurisdiction is clearly a question of law. *Iowa Mut. Ins. Co.*, 480 U.S. at 16, 107 S.Ct. at 976, 94 L.Ed.2d at 19; *Nat. Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 853, 105 S.Ct. 2447, 2452, 85 L.Ed.2d 818, 825 (1985); *Cropmate Co.*, 840 F.Supp. at 745. Therefore, the first *St. Cloud* element requiring a factual dispute, simply does not exist.

In addition, Keith's position in filing the second lawsuit in tribal court was not "absolutely irreconcilable" with his previous actions. *Id.* Filing the cause of action was a logical decision as jurisdiction in tribal court was no longer a problem based on Cheyenne River case law precedent. Furthermore, Keith lived on the reservation and was a member of the Cheyenne River Sioux Tribe. The dispute arose on the reservation and the cattle were housed on the reservation. Keith's choice in filing suit in tribal court was not an attempt to "play fast and loose with the courts," rather a valid exercise of his right to choose a forum. Since none of the *St. Cloud* elements were established, judicial estoppel does not apply and the Cheyenne

River Tribal Court of Appeal's holding was proper.

## IV. Public Policy

In addition, Gerald argues that SDCL 1-1-25 does not support comity because to do so would contravene public policy. However, no specific authority to support this proposition was presented before the circuit court or, for that matter, in Gerald's brief on appeal. Failure to cite authority to support an issue on appeal results in a waiver of that issue. *Zens v. Chicago, Milwaukee, St. Paul & Pac.,* 479 N.W.2d 155, 159 (S.D.1991). It is also settled law that we will not decide issues which the lower court did not fully consider. *Fullmer v. State Farm Ins. Co.,* 514 N.W.2d 861 (S.D.1994); *Hepper v. Triple U Enterprises, Inc.,* 388 N.W.2d 525, 527 n. 3 (S.D. 1986). Therefore, this portion of the argument has been waived.

### ISSUE II

THE CIRCUIT COURT DID NOT ERR BY GRANTING COMITY TO A TRIBAL COURT JUDGMENT STILL ON APPEAL TO THE TRIBAL APPELLATE COURT?

█ Gerald argues that the trial court's grant of comity to the tribal judgment was premature, since there was no ruling on that appeal by the Tribal Court of Appeals. Contrary to this assertion, there is no requirement under SDCL 1-1-25 that the tribal decision be final before comity can be granted. Instead, the real issue is the effect Gerald's failure to post a supersedeas bond had on the stay of the tribal court's judgment. Posting a supersedeas bond is required by both the Cheyenne River Code, Rule 37(b) and SDCL 15-6-62(a) and 15-26A-25.

This court has held on many occasions, that a party who fails to post a supersedeas bond will not divest the circuit court of jurisdiction and will not stay post-judgment relief. *Aune v. B-Y Water Dist.,* 505 N.W.2d 761 (S.D.1993) (citing *Pendergast v. Muns* 59 S.D. 135, 238 N.W. 344 (1931)); *Dardanella Financial v. Home Federal,* 392 N.W.2d 834 (S.D.1986); *State, ex rel. Sholseth v. Knight,*

52 S.D. 572, 219 N.W. 258 (1928). Gerald chose not to file the bond; we respect his choice. Nevertheless, there are consequences to any decision. Gerald's failure to post a supersedeas bond, required under both Cheyenne River Tribal and South Dakota law, may permit an execution of the judgment, regardless of his appeal status. Therefore, the circuit court had authority to consider and grant comity to the Cheyenne River Tribal Court judgment.

We Affirm.

MILLER, C.J., and SABERS and KONENKAMP, JJ., concur.

WUEST, Retired Justice, concurs in result.

GILBERTSON, Justice, not having been a member of the Court at the time this case was submitted, did not participate.

WUEST, Retired Justice (concurring in result).

My problem with the majority opinion relates to the second issue, i.e., the premature issue. I believe we should take judicial notice of the decision of the Tribal Court of Appeals affirming the Tribal Court and then hold the issue moot. (I would stop there). Since the majority chose a different route, I must express my disagreement with their rationale in affirming the last issue. A stay of execution whether in state court or tribal court is an entirely different legal concept than comity. Stays of execution, the posting of supersedeas bonds, etc. are statutory and these statutes apply to the sovereignty that enacts them. Comity is entirely different. As the majority opinion has noted " ' "[c]omity," ... is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation[.]' " *Mexican v. Circle Bear,* 370 N.W.2d 737, 740 (S.D.1985) (quoting *Hilton v. Guyot,* 159 U.S. 113, 163, 16 S.Ct. 139, 143, 40 L.Ed. 95, 108 (1894)).

In my opinion, the authority cited in the majority opinion is not appropriate to the comity issue. SDCL 1-1-25 does not expressly state the decision must be final before comity is granted; nevertheless, how

can we know how the other nation has acted until its decision is final? I believe we should wait until the time for appeal has run, or give the appellate court the opportunity to rule upon the issue if appealed. Wouldn't it be ridiculous if we granted comity and the tribal appellate court reversed for one or more of the reasons contained in SDCL 1–1–25, such as the order or judgment in the trial court was fraudulently obtained? I strongly believe we should give the court of last resort the opportunity to speak for the nation before we jump the gun and grant comity. The issue is moot here but we are setting a bad precedent for our trial courts. Sooner or later one of these tribal court decisions is going to be reversed after we have granted comity. I hope it is later than sooner.