#27587-a-JMK

**2016 S.D. 62**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE ESTATE
OF CHARLES C. COLOMBE, deceased.

| | |
|---|---|
| ROSEBUD SIOUX TRIBE, | Plaintiff and Appellee, |
| v. | |
| WESLEY COLOMBE, as<br>Personal Representative for the<br>Charles C. Colombe Estate, | Defendant and Appellant. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
TODD COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE KATHLEEN F. TRANDAHL
Judge

* * * *

| | |
|---|---|
| DANA HANNA<br>Rapid City, South Dakota | Attorney for plaintiff<br>and appellee. |
| CLINT L. SARGENT<br>RALEIGH HANSMAN of<br>Meierhenry Sargent, LLP<br>Sioux Falls, South Dakota | Attorneys for defendant<br>and appellant. |

* * * *

ARGUED ON APRIL 26, 2016

OPINION FILED **08/31/16**

#27587

KERN, Justice

[¶1.] An estate appealed from a circuit court's decision to grant comity to a Rosebud Sioux Tribal Court order. The order pierced a business's corporate veil and held decedent personally liable for a judgment in favor of the Rosebud Sioux Tribe. We affirm.

## BACKGROUND

[¶2.] Charles Colombe, a member of the Rosebud Sioux Tribe (RST) died on June 9, 2013. His son, Wesley Colombe, filed a petition for informal probate in Todd County, Sixth Judicial Circuit, and was appointed as personal representative of Charles's estate (the Estate). In February 2014, Wesley provided written notice to creditors. The RST filed a notice of creditor's claim, seeking to enforce an April 19, 2012 Rosebud Sioux Tribal Court (tribal court) order and judgment for $527,146.76. In response, Wesley filed a notice of disallowance of claim, asserting the RST could not show that the order was entitled to comity by satisfying the requirements of SDCL 1-1-25. The circuit court granted comity to the tribal court order and judgment. Wesley, on behalf of the Estate, appeals.

[¶3.] The April 19, 2012 tribal court judgment was the culmination of more than a decade of steady litigation between RST and BBC Entertainment Inc. (BBC). Aspects of this case have been reviewed by the tribal court, the Rosebud Sioux Tribe Supreme Court (RST Supreme Court), the federal district court, and the Eighth Circuit Court of Appeals. A truncated history of the litigation is necessary to provide context for the parties' arguments.

-1-

[¶4.]     The Indian Gaming and Regulatory Act of 1988 (IGRA) authorized creation and subsequent regulation of gaming by Indian tribes. 25 U.S.C. §§ 2701-2721 (2012). IGRA established the National Indian Gaming Commission (NIGC) to provide oversight of Indian gaming. Under IGRA, tribes are authorized to build casinos and enter into management contracts. However, the Chairman of the NIGC must approve all contracts and modifications. In 1994, RST entered into a five-year contract with BBC to build and manage a Class III gaming casino on the Rosebud Reservation. Wayne Boyd and Charles were the shareholders of BBC, with Charles being the primary shareholder and general manager of the casino.

[¶5.]     The agreement provided for a management fee of 35% of the net gaming revenue of the casino for a period of five years. The contract required BBC to deposit initial operating capital in an Operating Expense Reserve (OER) account. BBC failed to do so. RST and BBC later orally agreed that instead of the required deposit, BBC would contribute 7.5% of the casino's monthly net profits to the account. This modification was not presented to the Chairman of the NIGC for approval. Prior to the expiration of the contract in August 1999, BBC withdrew $415,857 from the OER account under the theory that they were entitled to this sum as part of their contractual share of the net profits.

[¶6.]     In August 2001, RST sued BBC in tribal court for breach of contract, alleging that the oral modification was invalid as the Chairman of the NIGC did not approve it. Additionally, RST argued that BBC was not entitled to any share of the OER account because BBC did not fund the OER as required by the contract. In

January 2004, the case was tried before Judge B.J. Jones[1] who ruled in favor of BBC. RST appealed to the RST Supreme Court who reversed Judge Jones's finding for BBC. The RST Supreme Court determined that the oral modification to the management agreement was invalid as it was not approved by NIGC. The RST Supreme Court remanded the matter to the tribal court for a hearing to determine damages.

[¶7.] RST filed a motion for rehearing en banc, arguing in part that no hearing was necessary as RST was entitled to the full amount withdrawn by BBC. The RST Supreme Court granted the request, but limited the en banc hearing solely to the proper measure of damages. On October 2, 2006, the RST Supreme Court affirmed its prior ruling and remanded the case to the tribal court for a detailed accounting. The Court clarified that it found invalid only the portion of the management contract that changed the funding mechanism for the OER account. On remand, BBC was not foreclosed from presenting its potential claims for unjust enrichment under the contract.

[¶8.] On October 16, 2007, Judge Jones entered judgment against BBC for $399,353.61 plus accrued interest of $127,793.15, a total of $527,146.76. BBC moved for a new trial and its request was denied. BBC did not appeal the judgment to the RST Supreme Court. As BBC was insolvent, it did not pay any part of the judgment.

---

1. Article 21 of the management contract set forth specific procedures for the appointment of a special judge to resolve disputes between the parties. This arrangement was authorized by § 13-6-109(b) of the Law and Order Code Tribal Gaming Ordinance. Appeals were to be governed by RST Rules of Appellate Procedure.

[¶9.] In February 2009, RST filed a complaint in tribal court against Charles, Boyd, and BBC. RST sought to pierce BBC's corporate veil and hold Charles and Boyd[2] personally liable for the judgment. In March 2009, Charles moved to dismiss the lawsuit. He argued RST failed to comply with a 2007 amendment to the Constitution of the Rosebud Sioux Tribe (RST Constitution),[3] depriving the tribal court of jurisdiction. In April 2010, Chief Judge Sherman Marshall, who presided over the lawsuit, denied Charles's motion to dismiss. In response, Charles sought permission to bring a discretionary interlocutory appeal. Chief Judge Marshall denied this request and ordered Charles to comply with written discovery requests by January 22, 2011.

[¶10.] Instead, Charles filed a lawsuit in federal court naming Chief Judge Marshall, the tribal court, and RST as defendants. *Colombe v. Rosebud Sioux Tribe*, No. CIV 11-3002-RAL, 2011 WL 3654412 (D.S.D. Aug. 17, 2011). Charles sought three things: (1) to vacate Judge Jones's October 16, 2007 judgment on the basis that the tribal court lacked jurisdiction to find the oral modifications to the contract void. He also argued that the IGRA did not provide for private action by RST; (2) a judgment on the merits finding that BBC did not violate the contract; and (3) an injunction preventing RST from pursuing any litigation against him relating to Judge Jones's October 16, 2007 judgment.

---

2. Boyd was later dismissed from the lawsuit.

3. In 2007, RST passed Amendment W to the RST Constitution, entitled Article XI, Tribal Court.

[¶11.]    In light of the federal lawsuit, Chief Judge Marshall and the tribal court's associate judges recused themselves from the tribal court lawsuit seeking to pierce BBC's corporate veil.  On November 7, 2011, Chief Judge Marshall appointed Patricia Meyers as a special judge to handle the case.  During the prior proceedings, Charles had failed to answer requests for discovery and comply with the tribal court's discovery orders.  RST filed a motion for summary judgment and a hearing was scheduled for March 13, 2012.  At the beginning of the hearing Charles's lay advocate, Oliver Seamans, orally moved for the recusal of Judge Meyers.  Seamans argued he had not received notice of her appointment.  Judge Meyers denied the request finding that the motion failed to comply with the requirements of tribal law.  Judge Meyers proceeded with the hearing and took the matter under advisement.

[¶12.]    On April 19, 2012, Judge Meyers entered an order granting RST summary judgment.  The order pierced the corporate veil and held Charles personally liable for the October 16, 2007 judgment.  Judge Meyers found that because Charles refused to comply with discovery requests, RST's requests for admissions were all deemed admitted.  Further, Judge Meyers found that Charles had engaged in fraudulent conduct by misappropriating assets for his personal use, restructuring BBC without notice to RST, and misusing the corporate structure to conduct his own business.  Judge Meyers concluded that the "liability incurred . . . arises from the fraud and injustice perpetrated on the Tribe."  Charles appealed to the RST Supreme Court.  The court dismissed Charles's appeal for a failure to provide proof of financial responsibility as required by the Rosebud Sioux Tribal Court Rules of Appellate Procedure.

[¶13.] During the litigation in federal court, the parties raised numerous issues resulting in four written opinions from the district court.[4] Only limited portions of the dispute are relevant to these proceedings. In response to Charles's complaint, RST filed a motion to dismiss on several grounds including its claim that BBC did not exhaust its tribal court remedies. The district court granted RST's motion in part, dismissing the claims related to Judge Jones's October 16, 2007 judgment. The court found BBC failed to appeal Judge Jones's second judgment and had not exhausted its remedies.

[¶14.] The parties eventually filed cross-motions for summary judgment. They asked the district court to consider whether the tribal court had jurisdiction to determine if the parties' oral modification to the casino management contract was void. The court granted RST's motion for summary judgment finding the tribal court had jurisdiction to rule on the validity of the oral modifications. *Colombe v. Rosebud Sioux Tribe*, 918 F. Supp. 2d 952, 961 (D.S.D. 2013). Charles appealed this and other rulings to the Eighth Circuit Court of Appeals. RST cross-appealed, "arguing the district court should have dismissed the entire complaint for failure to exhaust tribal court remedies." *Colombe v. Rosebud Sioux Tribe*, 747 F.3d 1020, 1021 (8th Cir. 2014). The Court of Appeals agreed with RST and reversed the district court. It held that BBC's entire complaint should have been dismissed for BBC's failure to challenge the tribal court's jurisdiction in tribal court and exhaust

---

4. *Colombe v. Rosebud Sioux Tribe*, 918 F. Supp. 2d 952, 956 (D.S.D. 2013); *Colombe v. Rosebud Sioux Tribe*, No. CIV 11-3002-RAL, 2012 WL 1378318 (D.S.D. Apr. 19, 2012); *Colombe v. Rosebud Sioux Tribe*, 835 F. Supp. 2d 736 (D.S.D. 2011); *Colombe v. Rosebud Sioux Tribe*, No. CIV 11-3002-RAL, 2011 WL 3654412 (D.S.D. Aug. 17, 2011).

tribal court remedies. It was during the pendency of the appeal before the Eighth Circuit Court of Appeals that RST filed its creditor's claim in the Estate.

[¶15.]    As personal representative of the Estate, Wesley moved to disallow RST's creditor's claim. Wesley alleged that Judge Meyers's appointment was invalid as it did not comport with the provisions of Article XI, §§ 2 and 4 of the RST Constitution or the RST Law and Order Code (RST Code) § 9-1-5(c). According to Wesley, this rendered Judge Meyers's decision invalid because she lacked jurisdiction to preside over the lawsuit. RST filed a motion to dismiss the probate, which they later withdrew, instead seeking comity for Judge Meyers's order.

[¶16.]    On January 8, 2015, the circuit court held an evidentiary hearing on Wesley's motion to disallow RST's creditor's claim. At the hearing, RST presented testimony from Eric Antoine, the in-house attorney for RST. The Estate presented testimony from Oliver Seamans, Charles's lay advocate during the tribal court action.

[¶17.]    On July 22, 2015, the circuit court entered findings of fact and conclusions of law granting comity to Judge Meyers's April 12, 2012 order and judgment. In making its decision, the circuit court noted that Charles had not exhausted his tribal court remedies by appealing Judge Meyers's final judgment to the RST Supreme Court. Accordingly, the RST Supreme Court did not have the opportunity to review Wesley's claim that Chief Judge Marshall lacked authority to appoint Judge Meyers. Nor did the RST Supreme Court review Wesley's claim that

RST failed to comply with the 2007 constitutional amendment allegedly depriving the tribal court of jurisdiction.[5]

[¶18.] The circuit court concluded that Chief Judge Marshall had authority under RST Constitution Article XI, §§ 2 and 4 to appoint Judge Meyers as a special tribal court judge. In reaching this decision, the court also relied upon RST Code § 4-2-8, which mandates that any matter not expressly covered by applicable tribal or federal laws shall be decided according to the customs and usages of RST. The court found that it was a long-standing practice of the tribal court for the Chief Judge to appoint special judges when necessary because of recusals. Additionally, the court noted that the RST Tribal Council implicitly approved of this practice by authorizing the tribal court's budget, which always included an amount to pay for special judges. The circuit court concluded that the RST Constitution, laws, customs, and practices authorized Chief Judge Marshall's appointment of Judge Meyers. Accordingly, it granted Judge Meyers's April 19, 2012 order comity and issued a money judgment.

[¶19.] We restate Wesley's issue as follows:

> Whether the circuit court erred by granting comity to Judge Meyers's April 19, 2012 tribal court order pursuant to SDCL 1-1-25.

---

5. Charles argued that the 2007 constitutional amendment, enacting Article XI, abolished the tribal court's jurisdiction. Both Judge Meyers and the circuit court rejected any notion that the newly enacted language of Article XI abolished the tribal court. Both found the tribal court was validly created under the RST Constitution. Appellant did not raise this issue on appeal.

## ANALYSIS

[¶20.]     A circuit court may recognize a tribal court's order pursuant to the doctrine of comity. *Langdeau v. Langdeau*, 2008 S.D. 44, ¶ 39, 751 N.W.2d 722, 734. The Supreme Court of the United States has defined comity as:

> The extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call 'the comity of nations.' . . . .
>
> 'Comity,' in the legal sense, is . . . the recognition which one nation allows within its territory to the legislative, executive[,] or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Gesinger v. Gesinger*, 531 N.W.2d 17, 19 (S.D. 1995) (quoting *Mexican v. Circle Bear*, 370 N.W.2d 737, 740 (S.D. 1985) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163, 16 S. Ct. 139, 143, 40 L. Ed. 95 (1895))). In order for comity to be granted under South Dakota law, the party seeking recognition bears the burden to establish that the elements of SDCL 1-1-25(1) have been met by clear and convincing evidence. *Langdeau*, 2008 S.D. 44, ¶ 39, 751 N.W.2d at 734. The elements provided for in SDCL 1-1-25(1) include:

> (a) The tribal court had jurisdiction over both the subject matter and the parties;
>
> (b) The order or judgment was not fraudulently obtained;
>
> (c) The order or judgment was obtained by a process that assures the requisites of an impartial administration of justice including but not limited to due notice and a hearing;
>
> (d) The order or judgment complies with the laws, ordinances and regulations of the jurisdiction from which it was obtained; and

(e) The order or judgment does not contravene the public policy of the State of South Dakota.

On appeal, we review comity as "a question of jurisdiction which is reviewed de novo." *Gesinger*, 531 N.W.2d at 19.

[¶21.] Wesley contends that the circuit court improperly granted comity to Judge Meyers's order because RST cannot satisfy the elements of SDCL 1-1-25(1)(c)-(e). In support of this contention, Wesley raises three primary arguments. First, he asserts that Judge Meyers's appointment was invalid as it failed to comply with the provisions of the RST Constitution and Code. Second, he argues that he was denied the impartial administration of justice because Judge Marshall, a defendant in Charles's federal case, appointed his own replacement. Additionally, he alleges that Judge Meyers erred by refusing to recuse herself from the tribal lawsuit when requested. Finally, Wesley argues that enforcing the tribal court judgment violates public policy as it grants a windfall to RST.

*1.    Compliance with the Laws, Ordinances, and Regulations*

[¶22.] Wesley first argues that the tribal court disregarded RST laws, ordinances, and regulations in the process that led to the appointment of Judge Meyers. According to Wesley, RST Code § 9-1-5(2)(c) requires the Judiciary Committee and Tribal Council to participate in the selection and approval of *all* tribal court judges. Because they did not participate in Judge Meyers's appointment, Wesley argues her appointment was invalid and she lacked jurisdiction. Additionally, he contends that the circuit court erred in finding that RST Constitution Article XI, §§ 2 and 4 authorized the appointment. These sections grant the Chief Judge the ability to promulgate rules for tribal court proceedings

and to "establish staff positions." Lastly, Wesley argues that reliance upon tribal court custom and usage, as permitted by RST Code § 4-2-8, is inapplicable as any alleged custom and usage "is directly contradicted by RST's Constitution and Law and Order Code."

[¶23.] In response, RST argues that it has shown by clear and convincing evidence that the tribal court complied with the RST Constitution and Code. RST first argues that RST Code § 9-1-5(2) does not apply to appointment of special judges. Rather, this provision requires Tribal Council approval for the appointment of the Chief and Associate Judges. Further, RST asserts that RST Constitution Article XI, §§ 2 and 4 support the Chief Judge's ability to appoint special judges. RST contends that the Tribal Council's annual approval of the line item in the budget for special judges supports this position. Lastly, RST argues that as the Code and Constitution are silent on the question, the circuit court properly relied upon RST's customs and usages to resolve the issue pursuant to RST Code § 4-2-8. RST argues that, to the extent this Court may review tribal laws, the record provides ample support that Judge Meyers's appointment fully complied with RST laws and tribal court practices.

[¶24.] Wesley's arguments, at their heart, raise the question of whether this Court has jurisdiction to review the validity of tribal court proceedings. South Dakota recognizes and supports tribal self-government and self-determination.[6] We acknowledge that the "forum whose jurisdiction is being challenged [should have]

---

6. *See Cheyenne River Sioux Tribe Tel. Auth. v. Pub. Utils. Comm'n of S.D.*, 1999 S.D. 60, ¶ 17, 595 N.W.2d 604, 608; *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14, 107 S. Ct. 971, 975, 94 L. Ed. 2d 10 (1987).

the first opportunity to evaluate the factual and legal basis for the challenge." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856, 105 S. Ct. 2447, 2454, 85 L. Ed. 2d 818 (1985) (declining to consider relief until tribal court remedies are exhausted). However, as Charles failed to appeal the order to the RST Supreme Court, we are left with no option but to consider the issues on appeal to determine if the trial court erred in granting comity. Additionally, in this unique and protracted case, the RST has asked this Court to interpret its constitution and statutes.

[¶25.] It is well established that tribal court orders should be recognized in state courts under principles of comity. *Hilton*, 159 U.S. 113, 16 S. Ct. 139; SDCL 1-1-25. The mere issuance of an order by a tribal court judge, however, does not by itself mean all formalities of the judicial process were valid. *Wells v. Wells*, 451 N.W.2d 402, 403-04 (S.D. 1990). We have previously examined whether tribal courts have satisfied tribal law on a number of occasions for purposes of comity determinations. *See, e.g.*, *Gesinger*, 531 N.W.2d 17; *Langdeau*, 2008 S.D. 44, 751 N.W.2d 722; *Wells*, 451 N.W.2d 402.

[¶26.] In *Wells*, we considered whether a circuit court correctly declined to grant comity to a tribal court divorce decree. The issue required assessment of the tribal court's jurisdiction to enter the decree. A husband filed for divorce in tribal court and, unaware of his wife's whereabouts, "attempted to obtain service of process on her by mailing a copy of the tribal court summons and complaint to her

attorney."[7] *Wells*, 451 N.W.2d at 403. The tribal code required that "the summons and complaint . . . ' be served personally' upon the defendant." *Id.* at 402. The tribal court accepted husband's mailing as sufficient service, granted him a decree of divorce by default, and awarded him custody of the children. Wife later filed for divorce in Pennington County. Husband moved to dismiss wife's action, arguing that there was no subject matter jurisdiction in state court because the tribal court had already issued a divorce decree. The circuit court rejected this argument and refused to grant comity to the tribal court's divorce decree. Husband appealed, arguing he had complied with the requirements of personal service and the tribal court order was valid.

[¶27.] Noting a lack of tribal authority defining *served personally*, we relied upon a dictionary definition and the plain meaning of the terms. Black's Law Dictionary defined *substituted service*, including *service by mail*, "as 'any form of service of process other than personal service.'" *Id.* at 404. We also looked "to the surrounding provisions of the tribal code for guidance in interpretation." *Id.* Other sections of the tribal code required a police officer to complete service and to prepare a return. Officers also had the option of leaving "a copy of the summons and complaint at the defendant's usual abode with a resident of the household[.]" *Id.* We concluded that the phrase *served personally* did not contemplate service by mail. We held that service was inadequate and affirmed the circuit court's decision refusing to grant comity to the decree.

---

7. Despite her attorney receiving these documents, wife refused to sign an admission of personal service.

[¶28.]        Like the issue in *Wells*, whether Judge Meyers had jurisdiction to enter the April 19, 2012 order is a question of statutory interpretation. "The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute." *Langdeau*, 2008 S.D. 44, ¶ 12, 751 N.W.2d at 727 (quoting *US W. Commc'ns, Inc. v. Pub. Utils. Comm'n of State of S.D.*, 505 N.W.2d 115, 123 (S.D. 1993)). An analysis of the question involves an examination of the RST Constitution Article XI, §§ 2 and 4 and RST Code §§ 9-1-5 and 4-2-8. When analyzing a constitutional provision we apply general rules of statutory construction. *Breck v. Janklow*, 2001 S.D. 28, 623 N.W.2d 449.

[¶29.]        Article XI, § 2 of the RST Constitution provides:

> The Tribal Court shall consist of one chief judge and such associate judges and staff as are deemed necessary by the Chief Judge, with the advice and consent of Tribal Council. All tribal court personnel shall be subject to the supervision of the Chief Judge. The Chief Judge shall establish such staff positions within the Tribal Court as may be necessary for efficient operation. The Chief Judge shall have the authority to establish qualifications for court staff and shall make the final selection of said staff.

Article XI, § 4 provides that "[t]he Chief Judge shall promulgate rules of pleading, practice, and procedure applicable to any and all proceedings of the tribal court, consistent with the provisions of this Constitution and requirements of federal law." The term *special judge* does not appear anywhere in the RST Constitution. Although the language of §§ 2 and 4 vest broad powers in the Chief Judge to establish staff positions necessary for the "efficient operation" of the tribal court, we do not agree with the circuit court's conclusion that this includes appointment of

special judges. The RST Constitution is simply silent on this point. In applying rules of construction, we must confine ourselves to the text of the provision we are interpreting. *See Moss v. Guttormson*, 1996 S.D. 76, ¶ 10, 551 N.W.2d 14, 17 ("The intent of a statute is determined from what the [L]egislature said, rather than what the courts think it should have said, and the court must confine itself to the language used.") (quoting *US W. Commc'ns, Inc.*, 505 N.W.2d at 122-23); Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012) ("Nothing is to be added to what the text states or reasonably implies. That is, a matter not covered is to be treated as not covered."). We will not presume the authority to appoint special judges from a silent text.

[¶30.] We next examine RST Code § 9-1-5. RST Code § 9-1-5 addresses appointment of the tribal court Chief Judge, associate judges, and tribal appellate court justices. It provides in pertinent part:

> 1. There shall be appointed three (3) appellate Court Justices consisting of two (2) or more attorneys licensed to practice before the Federal Courts and may include one (1) lay person, who shall have the same qualifications as those hereinafter specified for Associate Judges of the Tribal Court. All Appellate Justices are to be selected by the Tribal Judiciary Committee and approved by the Tribal Council.
>
> 2. There shall be appointed for the Tribal Court one (1) Chief Judge and two (2) or more associate Judges as the Judiciary Committee and the tribal Council see fit.
>
> . . . .
>
> > (c) All Tribal Court Judges shall be selected by the Judiciary Committee and recommended to the Tribal Council for approval. Appointments of Tribal Judges shall be for a probationary period of one (1) year during which time such appointment can be terminated by written notice from the Judiciary Committee or the Tribal Council. Following the one (1) year probationary period, Tribal Judges shall be appointed for a term of two (2) years.

Likewise a review of RST Code § 9-1-5 in its entirety contains no specific reference to special judges. *See Discover Bank v. Stanley*, 2008 S.D. 111, ¶ 21, 757 N.W.2d 756, 762 (requiring construction of statutes in their entirety).

[¶31.]         Subsections (1) and (2)(c) of the statute set forth the requirements for eligibility for appointment for certain court personnel. Wesley contends that the statute requires the Judiciary Committee and Tribal Council to participate in the selection and approval of *all* tribal court judges, including special judges. However, the language of the statute makes clear that subsection (2)(c) refers only to the Chief Judge and the associate judges. This is evident as subsection (2)(c) states that appointments "shall be for a probationary period of one (1) year . . . [and] Following the one (1) year probationary period, Tribal Judges shall be appointed for a term of two (2) years." This language cannot apply to appointment of special judges who are appointed only to preside over individual cases. Therefore, the requirement that selection of tribal judges be made by the Judiciary Committee applies only to the Chief Judge and the associate judges.

[¶32.]         The circuit court also found that RST Code § 4-2-8 permits reliance upon RST's customs and usages. RST Code § 4-2-8 provides that "[t]he Tribal Court shall apply the applicable laws of the Rosebud Sioux Tribe and the United States in actions before it. Any matter not covered by applicable tribal or federal laws shall be decided according to the customs and usages of the Tribe[.]" As indicated, neither the RST Constitution nor the RST Code refers to special judges. In light of this void, it is proper to look to the customs and usages of RST. The circuit court found,

> [i]t is a long-established and regular practice of the Tribal Court for the Chief Judge to appoint special judges, who are not full-time salaried associate judges of the Tribal Court, to preside over particular cases when the Chief Judge and associate judges must recuse themselves . . . . Pursuant to this long-standing court practice, the Chief Judge does not seek or require Tribal Council approval for his appointments of special judges.

The court determined that this practice had continued "in the Rosebud Sioux Tribal Court for at least twenty years." Wesley presented no evidence that the Tribal Council had ever disapproved of this method of appointments. While we disagree with the court's holding that the RST Constitution Article XI, §§ 2 and 4 provide authority to include the appointment of special judges, the appointment was authorized under RST Code § 4-2-8 as a long-standing tribal practice.

### 2. *Impartial Administration of Justice*

[¶33.] Wesley next argues that Charles was deprived of the impartial administration of justice. He first objects to Chief Judge Marshall's decision to appoint a special judge, as Marshall was a defendant in Charles's federal case at the time of the appointment. Additionally, Wesley contends that Charles's rights were violated by Judge Meyers's refusal to recuse herself from the proceedings. Wesley contends that neither Charles nor his attorney received notice of Judge Meyers's appointment and accordingly, could not seek her recusal prior to the hearing. Further, Wesley asserts that "[o]ral requests for recusal have been considered and granted by tribal court[s] in the past." According to Wesley, RST Rules of Civil Procedure Rule 63(b) requires only "a litigant's statement 'that he believes that he may not receive a fair trial before'" the presiding judge. Lastly, Wesley argues that Charles was precluded from appealing Judge Meyers's order because he could not

comply with the financial requirements of Rule 2 of RST Rules of Appellate Procedure. He also contends in passing that "RST failed to follow its established laws in its promulgation of its appellate rules."

[¶34.] We find Wesley's arguments to be without merit. First, Wesley's mere insinuation that Chief Judge Marshall appointed a special judge adverse to Charles's interest lacks any support in the record. Second, Charles did not appeal Judge Meyers's refusal to recuse herself or her April 19, 2012 order to the tribal appellate court. An appeal would have allowed the body best able to address these claims, the RST Supreme Court, to interpret its own laws. *See Iowa Mut. Ins. Co.*, 480 U.S. at 16, 107 S. Ct. at 977 (noting "tribal courts are best qualified to interpret and apply tribal law"). Much like the district court and Eighth Circuit Court of Appeals, we find Charles's failure to exhaust his tribal court remedies to be telling.[8] Wesley has put forth no legitimate reason for his failure to exhaust his tribal court remedies. Third, our role is not to examine the merits of the tribal court's rules of appellate procedure or to determine whether they create an undue burden upon a litigant. Wesley has not established that the alleged "partiality and problems" that arose in the case denied Charles of due process of law or a fair and impartial proceeding.

---

8. In addressing Charles's argument that he was unable to appeal Judge Jones's order because of BBC's insolvency, the Eighth Circuit Court of Appeals stated, "Colombe has failed to point us to any cases that excuse the exhaustion requirement on the basis of financial insolvency, and we decline to adopt such an exception now." *Colombe v. Rosebud Sioux Tribe*, 747 F.3d at 1025.

### 3. South Dakota Public Policy

[¶35.] Finally, Wesley argues that enforcing Judge Jones's tribal court judgment violates South Dakota's public policy as it creates a windfall in favor of RST. Under the judgment, Wesley contends RST received "money it was not owed under its mutually agreed upon terms with BBC[.]" Wesley asserts that both Judge Jones and the RST Supreme Court acknowledged this fact. Although the parties' oral modification to the contract was void, Wesley argues BBC earned money it did not receive. Furthermore, Wesley alleges that Judge Meyers failed to correctly apply the necessary factors for piercing BBC's corporate veil and that under the judgment RST receives "money from the estate of [a] shareholder in direct disregard of corporate formalities."

[¶36.] In response, RST argues that its efforts to collect money unlawfully taken from it do not contravene the provisions of public policy. Rather, RST argues that South Dakota's public policy, "respect[s] and support[s] the sovereignty of Indian tribes and the integrity of tribal courts." RST contends that Wesley "is simply trying to re-litigate the original contract dispute case against BBC and is asking this Court to effectively nullify the tribal court's decision."

[¶37.] We agree with RST. Wesley seeks to retry the proceedings before Judge Jones and Judge Meyers. Wesley asks this Court to review their tribal court rulings. Yet, BBC had the opportunity to appeal Judge Jones's final decision to the RST Supreme Court and failed to do so. This failure to exhaust his tribal court remedies led the Eighth Circuit Court of Appeals to dismiss his federal lawsuit. Likewise, Charles had the opportunity to appeal Judge Meyers's order to the RST

Supreme Court. His appeal was dismissed because he failed to provide proof of financial responsibility as required by the tribal court's rules of appellate procedure.

[¶38.] In addition to recognizing tribal sovereignty and self-government, South Dakota public policy enforces valid judgments to collect money unlawfully taken. A grant of comity to Judge Meyers's April 19, 2012 order permits enforcement of the order and judgment issued by Judge Jones and is consistent with this State's public policy.

## CONCLUSION

[¶39.] The circuit court did not err by granting comity to Judge Meyers's April 19, 2012 tribal court order pursuant to SDCL 1-1-25. Although not specifically authorized by Article XI, §§ 2 and 4 of the RST Constitution or RST Code § 9-1-5, Judge Meyers's appointment was authorized under RST Code § 4-2-8 as a long-standing tribal practice. Moreover, the proceedings did not deprive Charles of due process. He had several opportunities to appeal the tribal court rulings to the RST Supreme Court and elected not to do so. The enforcement of the tribal court judgment does not violate public policy. We affirm.

[¶40.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.